[No. 9558.   Department Two.   January 23, 1912.]

Mary Burger, *as Administratrix etc., Respondent,* v.
Taxicab Motor Company, *Appellant.*[1]

Master and Servant—Injury to Third Persons—Scope of Employment—Question for Jury. In an action for the death of a person run down by a taxicab, the fact that the taxicab belonged to the defendant and that the driver was in its employ as one of its regular drivers is sufficient to raise a question for the jury as to whether the driver was acting in the scope of his employment.

Same—Scope of Employment—Evidence—Sufficiency. In such a case, the *prima facie* case that the driver was acting in the line of his employment is not overcome by evidence that he was on the way to his night lunch and that it was contrary to rules of the defendant to take their cars on the way to meals, especially in view of impeaching evidence that it was not contrary to rules and was customary to do so.

Witnesses—Impeaching Own Witness—Surprise. In an action for the death of a person run down by defendant's taxicab while the driver was on the way to his supper, where the plaintiff called the manager as a witness under the belief that he would testify that drivers were allowed to take their cars while going to their meals, and was surprised by his testimony that it was contrary to rules, it is competent for plaintiff to impeach the witness by the stenographer's evidence as to his testimony to the contrary given at the inquest.

Municipal Corporations—Use of Streets—Collision With Automobile—Negligence—Evidence—Sufficiency. The negligence of the driver of a taxicab that struck and killed plaintiff's decedent, is for the jury, where there was evidence that he was driving at a speed of 25 miles an hour and exceeding the speed limit, that no horn or alarm was sounded, that he might have seen the deceased when more than 100 feet distant, but he testified that he did not see him until within twenty-five feet, and that he applied both brakes, stopping the car within twenty-five feet.

Same — Contributory Negligence — Evidence — Sufficiency. Whether a member of a city sewer gang, cleaning out catch basins at night, who was struck and killed by a taxicab, was guilty of contributory negligence, is for the jury, where it appears that he was at work where his duty placed him, which required him to walk slowly in a stooping position and give attention to the work in hand.

[1]Reported in 120 Pac. 519.

APPEAL—REVIEW—EVIDENCE—HARMLESS ERROR. In an action for wrongful death, it is not prejudicial error to allow the widow to testify as to the number of her children and how the deceased supported them, when it is not claimed that the damages are excessive.

MUNICIPAL CORPORATIONS—USE OF STREETS—NEGLIGENCE—INSTRUCTIONS. In an action for negligent driving of an automobile in a city street, error in refusing to withdraw an issue as to whether an alarm was sounded within 30 feet of a crossing, it appearing that the street was closed, is not prejudicial, where the court instructed the jury that the evidence of failing to sound a warning could not be considered if they found that the street was not opened and traveled.

Appeal from a judgment of the superior court for Spokane county, Huneke, J., entered December 28, 1910, upon the verdict of a jury rendered in favor of the plaintiff, in an action for wrongful death. Affirmed.

*Danson & Williams* and *McCarthy & Edge* (*George D. Lantz*, of counsel), for appellant.

*Nuzum & Nuzum* and *Geo. H. Armitage*, for respondent.

ELLIS, J.—Action by respondent against the appellant to recover damages for the death of respondent's intestate.

The deceased was in the employ of the city of Spokane as one of the sewer gang which worked at night flushing and cleaning out catch basins. About 10:30 o'clock on the night of May 17, 1910, while at work near the south curb of Sprague avenue, at its intersection with Spokane street, he was struck by a taxicab of the appellant in charge of its servant and received injuries which caused his death. The trial resulted in a verdict and judgment in favor of plaintiff. Defendant has appealed. At the close of the evidence, the appellant challenged its legal sufficiency to sustain any verdict for the plaintiff, and moved for an instructed verdict for defendant. The denial of the motion is assigned as error.

It is first contended that actionable negligence was not shown in that, it is claimed, the driver of the taxicab was not acting within the scope of his employment at the time

of the accident. His general employment as one of the regular drivers of the appellant was conceded. It was also conceded that the taxicab which he was driving belonged to the appellant. These things alone were sufficient to take the case to the jury on the question as to whether at the time he was acting in the line of his employment.

"In cases of this kind, where it is shown that the wagon and team doing damage belonged to the defendants at the time of the injury, that fact establishes *prima facie* that the wagon and team were in possession of the owner, and that whoever was driving it was doing so for the owner." *Knust v. Bullock*, 59 Wash. 141, 109 Pac. 329; *Kneff v. Sanford*, 63 Wash. 503, 115 Pac. 1040.

Was the *prima facie* case so made overcome? We think not. The driver testified that at the time of the accident he was on his way to his night lunch. He also testified, in effect, that there was no regulation prohibiting drivers from taking their cars with them to their meals; that "we always take our cars to meals, to a restaurant or some place or other;" that the drivers were generally supposed to notify the office before doing so, but that he had on different occasions called up after going and there had never been any objection; that the drivers were not always allowed to take their cabs with them when going home to their meals; and at this time he had not asked permission in advance.

The respondent's counsel believing, as the record discloses he had good reason to believe, that the appellant's manager would testify that drivers were permitted to take their cars with them wherever they went for their meals, called him as a witness. He testified to the effect that it was contrary to the rules of the appellant for the drivers going home to their meals to take their cars. Proper impeaching questions having been asked, the respondent was permitted to introduce the testimony of two stenographers who testified from their notes taken at the coroner's inquest. One of them testified that the appellant's manager then testified as follows:

"Wherever he (the driver) goes to eat his supper he is supposed to call up then and give us his 'phone number, wherever he is eating. . . . Q. And he is permitted to take his car right with him to where he goes to eat? A. Yes sir, we permit them to do that; if he would walk it would consume too much time, especially those that are living with their folks and living out in the residence district; it would entail an hour or an hour and a half practically, where it would only take a half hour with the car."

The testimony of the other stenographer agreed with this in every substantial particular. This evidence was competent for the purpose of impeachment, and the rulings of the court when it was offered indicate that it was only admitted for that purpose. Its weight was for the jury. We cannot say, as a matter of law, that the testimony of the appellant's manager at the trial that it was contrary to the rules of the appellant for its drivers going to their homes for their meals to take their cars with them, thus weakened by this impeaching evidence, was sufficient to overcome the *prima facie* proof that the driver was acting in the line of his employment, made by the admitted fact that the car was appellant's car and the driver the regular employee of the appellant.

Counsel now urges that the testimony of the stenographers was received as substantive evidence of an admission binding upon the appellant. While it was objected to as not proper for that purpose, that objection was coupled with an objection that it was not competent for impeachment, and that respondent could not impeach her own witness. It was clearly admissible for impeachment, and under the circumstances the respondent had the right to impeach this witness. His testimony was clearly a surprise. The court overruled the objection as a whole, and afterwards ruled that, to impeach the witness, the respondent was entitled to introduce the exact language used by the witness at the inquest. If the appellant was not satisfied that this limited the admission of the evidence to the single purpose of impeachment, it should have

asked for an instruction so limiting it.   Assuming, without deciding, that such an instruction would have been proper, no request for it having been made, the objection cannot now be urged.   Moreover, the evidence shows that the manager of the appellant company had with him at the inquest the attorney for that company who assisted in questioning him at that time, and that the attorney was at the inquest to protect the interests of the appellant company.   Under these circumstances, there would be strong reason for holding that the admissions of its manager at that time were binding upon the appellant.   We find it, however, unnecessary to decide this point since it cannot be fairly said that the evidence was admitted except for the purpose of impeachment.   The jury found in answer to a special interrogatory that the driver at the time in question had permission from the defendant company to use the cab in going to his meals.   We cannot say that this is contrary to the evidence, limited to the purpose for which it was plainly competent.

It is next contended that the evidence failed to show any negligence on the part of the driver of the taxicab.   The negligence alleged was excessive speed and failure to sound any bell or horn within thirty feet of a street crossing in violation of a city ordinance.   There was evidence tending to show that the cab was equipped with two lamps in front and that such lamps would throw a light a distance of from 200 to 250 feet.   There was also evidence that the cab was running at a speed of 25 miles an hour or more, and the jury so found in answer to a special interrogatory.   The evidence showed that the cab was equipped with two brakes, the "emergency" and "transmission," one operated by a mere pressure of the foot and the other with a lever within easy reach of the driver; that both could be applied simultaneously and in an instant; that the driver could have seen the deceased when he was more than 100 feet distant.   This the jury also found in answer to a special interrogatory.   He testified that he did not see the deceased till within 25 feet;

that he applied both brakes at once, sliding the wheels, and the cab went 25 feet before it was stopped. Deceased, when others of the sewer gang went to his assistance, was lying with his legs under the front of the cab about 18 or 20 feet from the coil of hose which he had been rolling when he was struck. There was also evidence that no horn or other alarm was sounded by the driver of the cab. The evidence showed that Sprague avenue runs east and west, and is crossed by Spokane street at right angles. On one side of Sprague, Spokane street was graded but not on the other. It was closed on both sides by barriers. This would excuse failure to sound a horn or ring a bell on approaching the crossing, and the court so instructed the jury. While all of the respondent's evidence as to excessive speed, and the driver's ability to have seen the deceased in time to stop before striking him, and the distance the cab went before finally stopping, was positively contradicted by the appellant's evidence, the questions as to whether the speed was so excessive as to constitute negligence and as to whether, by the exercise of reasonable care, the driver could have seen the deceased and stopped the cab in time to avoid striking him were plainly questions for the jury.

The jury also found in answer to a special interrogatory that the deceased was in the exercise of reasonable care for his own safety about the time he was hit by the automobile. He was at work where his duty placed him. The sewer gang had just finished flushing the catch basin, and he was rolling up a three-inch fire hose which was stretched upon the pavement. This necessitated his walking slowly in a stooping position and giving at least some attention to the work in hand. Whether he was negligent in not keeping a constant lookout for automobiles while doing his work which necessitated a position which in the nature of things would tend to prevent him from seeing an approaching vehicle was a question for the jury. One of the sewer gang known as the signalman carried a red light which he used during the

work of flushing the basins to signal vehicles and street cars to prevent them from passing over the hose. Just prior to the accident he was walking with this red light from where the deceased was across the street to the horse and hose wagon some forty feet away, and had just reached the horse and unsnapped the hitch rein when he heard the crash and the cry of the deceased caused by the cab striking him. Whether the deceased was negligent in not securing the signalman's light and keeping it with him, and whether it was practicable for him to do so, were also questions for the jury. The true rule as to the reciprocal rights and duties of persons driving vehicles, and laborers on the highway, is as follows:

"Persons riding or driving are bound to exercise reasonable care to see and avoid injuring persons who are at work in the streets, as well as pedestrians. And the laborer is not bound to neglect his occupation in order to avoid injury from the want of ordinary care on the part of drivers of vehicles. But he cannot recover if actually guilty of contributory negligence." 18 Am. & Eng. Ency. Law (2d ed), p. 586.

See, also, *Anselment v. Daniell*, 4 Misc. Rep. 144, 23 N. Y. Supp. 875; *King v. Green*, 7 Cal. App. 473, 94 Pac. 777; *Quirk v. Holt*, 99 Mass. 164, 96 Am. Dec. 725.

Error is also assigned because the court permitted the respondent to testify as to how many children she had, and that the deceased had supported them. If this was error it was not prejudicial. The only influence it could have had was to increase the amount of the verdict. It is not claimed that the verdict was excessive.

There was introduced in evidence an ordinance providing that, before reaching any street crossing, the driver of an automobile or other power driven vehicle must sound a bell at least 30 feet distant from such crossing. The appellant, in view of the fact that Spokane street was closed by barriers, requested an instruction withdrawing the issue as to the failure to sound a whistle or blow a horn, from the jury.

This was refused, but the court did instruct the jury that if it found from the evidence that Spokane street was not an open and traveled street that the ordinance would not apply, and that the evidence of such failure of warning should not be considered further. While the instruction requested by the appellant would have been proper the instruction given was sufficient. We cannot presume, in the absence of a special finding to that effect, that the jury disregarded the instruction given and considered the matter of warning at all. We find no prejudicial error in the record.

The judgment is affirmed.

DUNBAR, C. J., MORRIS, CROW, and CHADWICK, JJ., concur.