BYRD *v.* GALBRAITH.

Opinion delivered November 23, 1926.

1. AUTOMOBILES—CARE TO AVOID INJURING STREET LABORERS.—Persons driving motor cars must exercise reasonable care to see and avoid injuring persons at work in the streets, as well as pedestrians.

2. AUTOMOBILES—EXERCISE OF CAUTION BY STREET LABOBER.—A person at work in the street need not neglect his occupation to avoid injury from an automobile driver's want of ordinary care, but he cannot recover if actually guilty of contributory negligence.

3. NEGLIGENCE—INSTRUCTIONS AS TO CONTRIBUTORY NEGLIGENCE.—In an action for injury to plaintiff while at work in the street, an instruction that if the nature of his work precluded him from keeping a constant lookout for approaching automobiles and he was so engaged in his duties as not to see the approach of the automobile which struck him, he was not guilty of contributory negligence, *held* not error, in view of other instructions submitting such defense.

4. TRIAL—REPETITION OF INSTRUCTIONS.—Where the court, at defendant's request, charged that, before the plaintiff could recover, the jury must find that he was free from any negligence that contributed to his injuries, it was not error to refuse a further instruction setting up the same defense.

5. AUTOMOBILES—STREET LABORER—REASONABLE CARE.—One working in the street is responsible only for failure to exercise such care as reasonably prudent persons should exercise under similar circumstances to avoid injury by automobiles.

6. DAMAGES—PERSONAL INJURIES—EXCESSIVENESS.—A verdict for $3,500 in favor of a father for injuries to his minor son was not excessive where he had spent $3,200 for medical attention and would have to spend more.

7. DAMAGES—PERSONAL INJURIES—EXCESSIVENESS.—In view of his suffering and permanent injuries, a recovery of $14,000 by plaintiff *held* not excessive.

Appeal from Jefferson Circuit Court; *T. G. Parham,* Judge; affirmed.

*Maurice Reinberger* and *Coleman & Gantt,* for appellant.

*Harry T. Wooldridge,* for appellee.

HUMPHREYS, J. Appellee, Oliver Galbraith, father of appellee, Fred Galbraith, instituted suit in his own right, and as next friend for his said minor son, against appellant, in the circuit court of Jefferson County, to recover

damages for injuries inflicted upon his son through the alleged negligence of appellant in running over him with an automobile, at the intersection of Fifth Avenue and Main Street, in Pine Bluff, while engaged in painting a "No Left Turn" sign on the surface of the street, as an employee of the city.

Appellant filed an answer, denying the allegations of the complaint and, by way of affirmative defense, pleading contributory negligence on the part of appellee's son.

The cause was submitted upon the pleadings, the testimony adduced by the respective parties and the instructions of the court, which resulted in verdicts and consequent judgments in favor of Oliver Galbraith for $3,500 and Oliver Galbraith, as next friend for Fred Galbraith, for $14,000, from which is this appeal.

The substance of the evidence, reflected by the undisputed testimony, is about as follows: The injury occurred between 8 and 9 o'clock P. M. on September 16, 1924, at the intersection of Fifth Avenue and Main Street, in said city. Fifth Avenue runs north and south and Main Street east and west. The street car company operates a double track along Main Street. At this particular point Main Street is 55 feet wide, and the distance from the west car rail of the west car track to the curb line on the west side of Main Street is 20 feet. It maintains a safety zone on the north side of the intersection and on the west side of the double tracks for passengers to get off and on the street cars running south on Main Street. Traffic going south on Main Street was required to keep on the west side, and traffic north to keep on the east side of the center of Main Street. The street intersection is in the business part of the city, where the traffic is heavy, the Hotel Pines being on the northwest corner of the intersection, McEwen's Dry Goods Store on the southwest corner, Franey Brothers' Store on the southeast corner, and the Y. M. C. A. building on the northeast corner. The intersection of the streets at this point was perhaps the best lighted intersection of streets in the city.

Fred Galbraith was an intelligent young man, having graduated from the high school when he was sixteen years of age. He was eighteen years of age at the time of the injury, and had been working in the city engineer's office for over a year, as inspector of streets and sewers. He was familiar with the streets and conditions of traffic in all parts of the city. He and two assistants had been directed to repaint the traffic signs on the surface of the streets, and were permitted to select their own time for doing the work. Fred Galbraith was told by the city engineer, on the afternoon of the night that the injury occurred, to go that night and paint the "No Left Turn" sign at the intersection of Fifth Avenue and Main Street. On the occasion of the injury, Fred Galbraith was dressed in khaki pants and light brown shirt, and was working about five or six feet west of the west car rail on the west car track, leaving a space of about fifteen feet between the west curb line of Main Street and himself, for automobiles to travel going south on said street. At the time he was struck by appellant he was facing south, in a stooping or kneeling posture, down on the street, painting on the surface thereof, in large letters, "No Left Turn", and was devoting strict attention to the performance of his duties, not moving around or about on the street, and had been in the same position for fifteen or twenty minutes. While thus engaged, an automobile, owned and operated by appellant, traveling south on Main Street, struck him in the rear and knocked him over on the pavement. His foot was caught in the axle of the car, and he was dragged a distance of 68 feet before appellant brought his car to a stop and Galbraith was extricated. He did not know that he had run over Galbraith until Galbraith's co-worker jumped on the running-board of the car and told him what had happened. Galbraith did not see appellant's car before it struck him. Appellant was not looking in the direction of Galbraith at the time he ran over him, his attention having been attracted to some girls across the street, who had called to him. At the time of the injury Galbraith

was not working under the protection of lanterns or other guards. There is nothing in the record, however, to show that it was customary, when this character of work was being done at night, to put out lanterns or other signs.

Fred Galbraith was immediately removed to a hospital and examined by a physician. It was found that the skin had been peeled almost entirely off his back, a hole punched in his side, and that he had sustained minor cuts and bruises practically over his entire body. He recovered from these injuries, but suffered intense and excruciating pain from them for a period of about six weeks. In addition to these temporary injuries, he received a permanent injury to his left arm, from which he was still suffering at the time of the trial. A hole was punched in his left elbow which required two operations by home surgeons, and later a major operation by Dr. Willis C. Campbell, of Memphis, an eminent bone specialist. He remained in Dr. Campbell's clinic from December 27, 1924, until March 1, 1925, under the care of Dr. Campbell and his assistants. The operation performed by Dr. Campbell consisted in the removal of an extensive area of diseased bone. The wound had not healed at the time of the trial. Dr. Campbell and other physicians testified that the injury was a permanent one, rendering his left arm twenty-five per cent. deficient. At the time of the trial his father had expended about $3,200 for hospital, nursing and medical services, and was then bearing the expense of having the wound dressed daily.

The only disputed questions of fact arising out of the testimony consisted in a contrariety of opinions as to whether it was better to paint the traffic signs in the daytime or at night, and whether the work could have been performed in such a manner as to allow or permit Fred Galbraith to have kept a lookout for automobiles and in that way avoid the injury. Bearing upon that point, Jim Whittle testified that a man painting letters already outlined could stand on any side of them and do the work, which would enable him to keep a lookout while repainting them, whereas appellee, Fred Galbraith, testified that

he kept no lookout whatever while painting the sign, because he could not and paint the sign.

Appellant contends for a reversal of the judgment upon three alleged grounds:

First: In giving instruction number 3 on behalf of appellees, over the objection and exception of appellant.

Second: In refusing to give instructions numbers 5 and 9, requested by appellant, over his objection and exception.

Third: Because the verdict was excessive..

The general law applicable to cases of this character is well stated in the case of *Burger* v. *Taxicab Co.,* 66 Wash. 676, 120 Pac. 519, as follows:

"The true rule as to the reciprocal rights and duties of persons driving vehicles and laborers on the highway is as follows: 'Persons riding or driving are bound.to exercise reasonable care to see and avoid injuring persons who are at work in the streets, as well as pedestrians. And the laborer is not bound to neglect his occupation in order to avoid injury from the want of ordinary care on the part of drivers of vehicles. But he cannot recover if actually guilty of contributory negligence.'"

The same doctrine was announced in a Michigan case, styled *O'Donnell* v. *Lange,* 162 Mich. 654, 127 N. W. 691 (quoting from the syllabus): "One employed as a street cleaner must, while at work, use ordinary care to avoid injury from passing vehicles, but he need not neglect his work to escape collision with those not using reasonable care."

With this rule in mind, we will proceed to a consideration of the alleged errors of the trial court in giving instruction number 3, requested by appellees, and in refusing to give instructions numbers 5 and 9, requested by appellant.

1. Instruction number 3, given by the court over appellant's objection, is as follows:

"If you believe from a preponderance of the evidence in this case that the plaintiff, at the time of the

injury, was an employee of the city of Pine Bluff and, under the directions of the city engineer, was engaged in painting a 'No Left Turn' sign upon the street, and that the nature of his work precluded him from keeping a constant lookout for approaching automobiles; that, at the time he was struck and just before such time, he was not moving about or around upon the streets, and that he was so engaged in his duties as not to see the approach of the automobile which struck him, then the court tells you that he was not guilty of contributory negligence.''

Appellant assails the instruction upon the alleged ground that it, in effect, relieved appellee entirely of the duty of keeping any lookout whatever, or taking any precaution for his own safety, regardless of whether he might have done so in the proper performance of his duties in the exercise of ordinary care for his own safety. Or, expressing it differently, that the instruction eliminated the defense of contributory negligence entirely from the case. We do not think the instruction susceptible of the construction placed upon it by appellant. It is apparent that the trial court did not intend to exclude appellant's defense of contributory negligence, else he would not have given instruction number 1, which is as follows:

''If you believe from a preponderance of the evidence in this case that, at the time he was injured, the plaintiff, Fred Galbraith, was engaged in performing his duties as an employee of the city of Pine Bluff in painting a 'No Left Turn' sign at the intersection of Main Street and Fifth Avenue, and that, while so doing, he was devoting strict attention to his duties and was in the exercise of that degree of care reasonably consistent with the practical performance of his work, and that, while so engaged, an automobile driven by the defendant, traveling south on Main Street, approached the intersection of Fifth Avenue and Main Street, and that the defendant negligently failed to keep such a lookout for plaintiff or others who might be lawfully upon said street as a reasonably prudent person, in the exercise of

ordinary care under the same or similar circumstances, would have done, and that, by reason thereof, Fred Galbraith was struck by said automobile, thereby causing the injuries of which he complains, then you are instructed that your verdict should be for the plaintiff; provided, that you further find that' the plaintiff himself was not guilty of contributory negligence as defined in these instructions.''

Certainly, if it had been the intention of the court to exclude contributory negligence on the part of appellee, Fred Galbraith, as an affirmative defense in the case, he would not have given instruction number 4, requested by appellant, which is as follows:

''Before you can find for the plaintiff, Fred Galbraith, you must find that he himself was free from any negligence that contributed to his injuries.''

We think instruction number 3, correctly interpreted, meant that Fred Galbraith was not required to spend all of his time in keeping a lookout for approaching automobiles, and that it would not be negligence as a matter of law on his part to fail to look and listen for approaching vehicles while he had his mind and eyes on his work. Under this interpretation, the instruction correctly stated the law, for a workman in a street could not possibly keep a constant lookout for approaching vehicles and perform duties which required him to think and see. *Reagan* v. *Los Angeles Ice & Cold Storage Co.*, 46 Cal. App. 513. We think, when instruction number 3 is read, as it should be, in connection with instruction number 1, given by the court at appellees' request, they cover the whole law declared in the cases above referred to.

2. Appellant is in no position to complain at the court's refusal to give his requested instruction numbers 5 and 9, after having prevailed upon the court to give instruction number 4. Both 5 and 9, in effect, preclude a recovery by appellees if Fred Galbraith failed to exercise such care for his safety as an ordinarily careful and prudent man would have done under the same or similar

circumstances. Instruction number 4, set out above, was broader and more favorable to appellant than either one or both instructions numbers 5 and 9. It prevented the recovery by appellees if Fred Galbraith, by commission or omission, contributed to his injury by the slightest negligence, whereas the law renders him responsible only for the failure to exercise such care as a reasonably or ordinarily prudent person would or should exercise under the same or similar circumstances. In other words, the instruction holds him to the very highest degree of care, when the law requires him only to exercise ordinary care.

3. Relative to the claim that the verdict is excessive, it is only necessary to call attention to the fact that the father, Oliver Galbraith, showed that he had expended on his son almost as much as the amount awarded him, and that he will have to expend other amounts before the wound heals. This verdict in his favor, as we understand the record, does not take into account any amount for the loss of the services of his son.

When the extent and nature of the injury is considered in connection with the excruciating pain suffered by Fred Galbraith, as a result of the injury, it cannot be said that $14,000 was an excessive allowance to him.

No error appearing, the judgment is affirmed.