NORTHWESTERN CASUALTY & SURETY COMPANY *v.* ROSE.

Opinion delivered February 29, 1932.

*Buzbee, Pugh & Harrison,* for appellant.

*Rose, Hemingway, Cantrell & Loughborough,* for appellee.

BUTLER, J. This action was instituted by appellee against appellant, Northwestern Casualty & Surety Company, to recover from appellant under an automobile liability insurance policy for sums appellee expended for medical bills and hospital bills for one Ben D. Bonner, struck by appellee's automobile.

On the trial of the case the appellant took the position that it was not liable for medical and hospital bills because of the following provision in the policy: "The assured shall co-operate with the company at all times in facilitating the disposition of claims and suits, but shall not voluntarily assume any liability nor incur any expense or settle any claim except at his own cost without

written consent of the company. In case of personal injury, the assured may provide at the company's expense such first aid as is imperative at the time of the accident."

Upon this theory the appellant first requested a peremptory instruction for a verdict in its favor, and, such instruction being refused, it requested by instruction No. 2 a declaration that the appellee was only entitled to recovery for expenses incurred in securing immediate aid necessary at the time to relieve the sufferings of Bonner, and to see that he reached a place for treatment. The court refused to give instruction No. 2 as requested, but modified the same by adding the words, "unless Mr. Rose was liable to Mr. Bonner for his injury and damages." The instruction, as modified, reads as follows: "You are instructed that in this case plaintiff is entitled to recover only for such immediate and imperative aid as was necessary to at the time relieve the sufferings of Mr. Bonner, unless Mr. Rose was liable to Mr. Bonner for his injury and damages."

The trial resulted in a verdict in favor of the appellee for $1,640.05, the amount admittedly expended for medical bills and hospital fees.

Hospital charges and expense of medical treatment and such other expenses as are necessarily incurred in the usual and ordinary treatment of a victim of an accident are among the damages which are the direct and proximate result of the injury for which a recovery may be had against one whose negligent conduct causes the injury, and therefore come within the terms of a liability insurance policy such as the one before us, by which the assured is indemnified against liability for damages suffered by any person on account of the operation by the assured of an automobile causing the injury. *U. S. Casualty Co.* v. *Johnson Drilling Co.*, 161 Ark. 158, 255 S. W. 890, 34 A. L. R. 727.

The appellant now concedes the rule announced and the correctness of the court's modification of its instruction No. 2, but insists that there could be no recovery except for the expenses of first aid because the evidence

does not justify the finding that the appellee was liable for the accident. After the appellant was notified of the accident, it procured an explanatory statement from Mr. Rose, and, presumably after other investigations, settled with Mr. Bonner, the injured person, for $5,000, exclusive of the amount expended by Mr. Rose for hospital and medical attention for Bonner, and, during the course of the settlement with Mr. Bonner, Mr. Rose was advised by the appellant that Bonner was willing to accept $5,000 in settlement provided the former would assume for his own account the medical and hospital bills which he had paid. This Mr. Rose declined to do. Because of this refusal and the contention of the appellant as to the law of the case noted above, it seems that the testimony regarding the accident was not fully developed, the only testimony taken with respect to the same being that of Mr. Rose himself. We, however, are of the opinion that this was sufficient to warrant the jury in finding that there was liability. It is the well-settled rule that the duty rests upon the driver of an automobile to exercise ordinary care in its operation, and in the exercise of such care it is his duty to keep a constant lookout to avoid injury to others. This is particularly incumbent upon him when driving on the street of a city in order to avoid injury to pedestrians, as he should anticipate their presence upon such streets and their equal right to their use. *Murphy* v. *Clayton,* 179 Ark. 225, 15 S. W. (2d) 391; *Byrd* v. *Galbraith,* 172 Ark. 219, 288 S. W. 717; *Smith A. T. Co.* v. *Simmons,* 181 Ark. 1024, 28 S. W. (2d) 1052; *Duckworth* v. *Stevens,* 182 Ark. 161, 30 S. W. (2d) 840; *Morel* v. *Lee,* 182 Ark. 985, 33 S. W. (2d) 1110.

It is the rule arising from common custom and recognized by law (Acts 1927, p. 721, § 9; Huddy, Cyc. Auto Law, vols. 3, 4, p. 157) that it is the duty of the driver of a motor vehicle to keep to the right of the road, and whether this is done or not is a matter to be considered by the jury in determining the question of negligence. The accident to Bonner occurred on Woodlawn Avenue, just beyond where it passes out of Prospect Ave-

nue. Woodlawn does not leave Prospect at a right angle, as is usual in city streets, but at less than a 45 degree angle, so that on leaving Prospect and entering Woodlawn one has a clearer view of the way ahead than where a street crosses at right angles. Mr. Rose was driving to his home on Woodlawn and approached on Prospect Avenue, turning into Woodlawn, driving at about the center of the street because it was a gravel street, and he was selecting the smoothest part of the road. This was on the 16th day of November, on a rainy evening. It was dark, but the street lights had not yet been turned on. He had passed the intersection of Prospect and Woodlawn about four car lengths "when all at once a man loomed up in front," who appeared to be walking toward Rose. Rose thought the man too close to apply his brakes and stop the car, and thought that he could avoid striking him by turning quickly to the right. This he did but did not accomplish his purpose, striking the man with the left lamp and fender of his car, causing him to fall and the wheels of the car to pass over him. There was no one present at the time of the accident except Mr. Rose, the driver of the car, and Mr. Bonner, who received the injury. Within a short time, however, some one came who telephoned for an ambulance, and Bonner was taken to the hospital at the direction of Rose, where he was treated for about a week, and it was then deemed necessary to amputate his left leg. This operation was performed, and Mr. Rose paid the hospital expenses, including nurse's hire, surgeon's fees and other necessary expenses, amounting in all to the sum sued for.

The testimony is silent with reference to the direction from which Bonner was crossing the street, but it is reasonable to infer that it was from the left of the driver of the automobile, as the left light and fender knocked him down. The manner in which Woodlawn leaves Prospect Avenue does not require any considerable slowing down of a car to make the turn, and it was in testimony that the car was being driven at about 18 miles an hour and was slowed down somewhat on entering

Woodlawn. There is no testimony as to whether or not the horn was sounded on making the turn or as to whether the headlights of the car were burning. If the lights on the car were not burning, it would have been extremely difficult to see ahead at all, and the jury might have inferred that, under the conditions then existing, the lights were burning, and, if so, that they cast light a sufficient distance ahead to enable Bonner's presence on the street to have been discovered in time for the driver of the car to stop the same by an application of the brakes, or to have turned it to the righthand side of the street where it properly belonged, and thus to avoid the injury to Bonner. There was no question raised as to the contributory negligence of Bonner, nor is there any evidence regarding his actions except the impression of Mr. Rose, who stated that "he was angling across the street," and that the point of accident was not at the crossing. It must have been very near the crossing, however, since the accident occurred just after the car was "straightened out on Woodlawn, and in about the center of the street." All of these circumstances raised a question of fact as to whether or not the appellee was in the exercise of ordinary care, and such circumstances are sufficient to sustain the finding that he was not.

The judgment is therefore correct, and it is affirmed.