COMPRESSED INDUSTRIAL GASES, INC., *v.* TODD.

4-5506                                                              129 S. W. 2d 262

Opinion delivered May 29, 1939.

*Buzbee, Harrison, Buzbee & Wright,* for appellant.

*George F. Hartje* and *R. W. Robins,* for appellee.

HUMPHREYS, J. On December 16, 1937, about 7:30 o'clock p. m. on a dark, rainy night a collision occurred on highway 65 in Faulkner county, near Mayflower, between appellants' truck which was being driven by Hugh E. Coleman, its agent, and a Chevrolet sedan being driven by Paul K. Todd, the owner thereof.

Mrs. Joyce K. Todd, the wife of Paul K. Todd, was riding in the Chevrolet sedan with her husband and they were returning to their home in Texas from a visit to relatives in Missouri. They had a boy-child, three years old, but had left him with his grandparents in Missouri. Paul K. Todd was twenty-eight years old and had employment in Texas at $200 per month. His expectancy was thirty-one years and he was a kind, loving and devoted husband and father. He was strong and healthy physically. Mrs. Joyce K. Todd was about twenty-seven years of age and in good health. The truck was a combination tractor and trailer, 26½ feet long and contained a steel body 84 inches wide. The truck weighed 11,000 pounds and was loaded with gas drums weighing 18,000 pounds, the total weight of truck and load being close to 30,000 pounds. The Chevrolet weighed 3,250 pounds. The collision resulted in the immediate death of Paul K. Todd and the permanent injury and maiming of Mrs. Joyce K. Todd. Mrs. Joyce K. Todd remained unconscious for several days and remained in the hospital until about January 1. Her mind did not clear up entirely until sometime in February. After regaining her memory relative to the incidents preceding the collision she brought a suit in the circuit court of said county under the provisions of §§ 1277 and 1278 of Pope's Digest for the benefit of herself, as widow, and Paul Craig Todd as the sole heir at law of Paul K. Todd, deceased, against appellants; and also brought a separate suit in said court against appellants for damages on account of the injuries she received in the collision.

She grounded her action in both cases upon the alleged negligence of appellants in operating said truck at an excessive rate of speed, considering the condition of

said pavement, which was wet and slippery; in failing to maintain a proper lookout for the automobile in which Paul K. Todd, deceased, was traveling; in failing to keep said truck under proper control; in failing to drive said truck on the proper side of the pavement; in failing to have body or clearance lights burning on said truck and by negligently driving said truck against the automobile in which Paul K. Todd and appellee were traveling.

An answer was filed in the first case denying each and every material allegation of negligence contained in the complaint and alleging that Paul K. Todd came to his death through his own negligence.

An answer was filed in the latter case denying each and every material allegation of negligence alleged in the complaint and alleging that the injuries received by appellee were received because of the negligence of persons other than appellants.

The cases were consolidated without objection by proper orders for the purposes of a trial.

The consolidated cases were submitted to a jury upon the pleadings, evidence introduced by the respective parties and instructions of the court resulting in a verdict against both appellants in favor of Mrs. Joyce K. Todd on account of the injuries received by her in the sum of $15,000, and in favor of appellee for the use and benefit of Paul Craig Todd, a minor, for $15,000, and for her benefit, as widow, for $10,000, and judgments were rendered in accordance with the verdicts, from which is this appeal.

Appellants contend for a reversal of the verdicts and consequent judgments on account of the alleged insufficiency of the evidence to support them.

The collision occurred near the bottom of a slight hill down which the Todd's car was traveling. The truck came down a slight hill also and started up the first hill. As each came over the crest of the hill on which he was traveling the drivers observed the other approaching and dimmed his lights. Just after doing this the Todds observed a truck in front of them with a trailer loaded with cedar or Christmas trees and slowed down so as not

to run into the trailer in front of them. The truck and trailer loaded with Christmas trees and the Todds were traveling south on the west or right-hand side of the road. in the direction in which they were traveling. The truck in front of them was traveling about fifteen miles an hour. Mrs. Todd testified that when they reached the foot of the hill they were about a car and a half behind the truck in front of them when the truck they had seen coming north over the crest of the hill in front of them passed the truck and trailer loaded with Christmas trees and veered toward their car; that the headlights of the oncoming truck were turned in the direction of their 'ar and shone into it, at which time she lost consciousness and knew nothing of what happened afterwards. She testified that her husband did not turn his car toward the east side of the road, but continued straight ahead about the length of a car and a half behind the truck immediately in front of them loaded with cedar or Christmas trees.

The only other eye-witness was Hugh E. Coleman, the driver of the truck owned by the Compressed Industrial Gases, Inc., who testified that just after passing the truck or trailer loaded with cedar trees the Todd car came onto his, or the east side of the road and struck his front bumper, bounced back and struck him again and when the truck he was driving stopped, it was angling across the road toward the west and his trailer had turned over on the right or east side of the road and spilled out most of the load.

Both of the parties in the truck loaded with cedar trees testified that the collision occurred behind their truck or trailer and that either Todd's car or the truck was thrown into the trailer and their trailer was knocked off and torn all to pieces; that they were driving only ten or fifteen miles an hour and that their load was not heavy; that it was dark and raining, and as the slab was only twenty feet wide, they were driving very close to the edge of the pavement on the right side; that when they first saw the Compressed Industrial Gases, Inc., truck driven by Hugh E. Coleman as it came over the hill toward them the driver was going at a very rapid rate

of speed; that he seemed to pass very close to them; that they did not see any lights or clearance lights on the side of the truck approaching them; that at the time the collision was over the Todd car was seventy-five or eighty feet back of them and had turned around and was facing north.

Ed Martin testified that he reached the place of the collision a few minutes after it occurred and that appellants' truck was turned across the highway facing the west, sitting upon its wheels and that the trailer of the truck was turned over on its side and that the Todd car was about thirty feet behind the truck and was facing north in the center of the slab.

A. J. Starr testified that he was justice of the peace, living near Mayflower, and heard the collision and took a lantern and went over there and got there about ten minutes after it happened; that it looked like the trouble had happened behind the Christmas tree truck; that he found Mr. and Mrs. Todd both lying at or near the wreck and that he could not tell just exactly where the collision occurred, but that appellants' truck was headed toward the west and that the Todd car was about the middle of the highway and that Hugh E. Coleman, the driver of appellants' truck, told him that his truck hung upon the Chevrolet car and that he had driven some distance trying to shake loose and in doing so his trailer turned over.

Pictures of the Todd car and the truck made after they were taken to the garage for repairs appear in the record.

Appellants' truck showed a slight injury to the left front bumper and the radiator. Neither the front part of the truck nor the Todd car appear to be injured to any great extent, but, according to the photographs, the entire left-hand side of the Todd car had been sheared off beginning just back of the front bumper and continuing toward the rear so as to take off the left rear wheel. The jury might well have found from the two pictures or photographs that the Todd car had been swiped by appellants' truck which had sheared off practically the left side of the car.

The main factual issue in this case is whether the driver of appellants' truck negligently veered or turned his truck to the west immediately after passing the truck loaded with cedar trees into the Todd Chevrolet while it was being driven south on the right-hand side of the road or whether Paul K. Todd, in an effort to pass the truck loaded with cedar trees, negligently drove his Chevrolet to the east across the center of the slab into appellants' truck.

Appellants argue that the undisputed evidence shows that Todd drove his Chevrolet to the east side of the road across the center line thereof into appellants' truck and that there is no substantial evidence in the record showing the contrary. The driver of appellants' truck testified that the collision was a head-on collision caused by Todd driving his car in front of the truck and striking it twice. Mrs. Todd testified positively that her husband who was driving the Chevrolet never turned off his side of the road, onto the other side of the road but that he kept on his own side of the road following the truck loaded with cedar trees and that the driver of appellants' truck turned west in the direction of their car; that the headlights of the truck, instead of shining straight down the road in the direction it should have gone, turned directly onto their car, at which time she became unconscious. The drivers of the car loaded with cedar trees testified that the collision occurred just back of their car and just after the truck had passed them going north; that in passing them the truck came very close to them and was traveling at a high rate of speed. The photographs taken after the cars had been removed showed there was no head-on collision, but that the Chevrolet car had been sideswiped in such a way that its side next to the truck was sheared off. According to the statement of the driver of the truck to the justice of the peace, his truck hung onto the Chevrolet and in an effort to pull loose he drove quite a little way and in doing so caused his own trailer to turn over and spill its load on the east side of the slab. We cannot agree with appellants' analysis of the evidence to the effect that there is no substantial evidence to show that the collision was due to the

negligence of the driver of appellants' truck, but was due to the negligence of Todd in driving the Chevrolet. The evidence tends to show that this heavily loaded truck without clearance lights on the side was being driven at a high rate of speed on a dark, rainy night and just after passing or in the act of passing the truck loaded with cedar trees veered to the west and struck or hooked onto the Chevrolet car and in an effort to get loose from it proceeded for some little distance, turning the Chevrolet around in the opposite direction from which it had been traveling and after getting loose from it stopped angling across the road in a westerly direction.

Appellants did not argue that the judgments obtained in the case were excessive and we see no necessity of setting out the evidence or any part thereof tending to show the extent of the injuries received by Mrs. Joyce K. Todd or the suffering she endured. Suffice it to say that Paul K. Todd was killed perhaps immediately and the injuries and suffering received and endured by Mrs. Joyce K. Todd justified the verdict of the jury in her favor. We have carefully read the instructions given by the court and those refused at the request of appellants and think those given correctly declared the law applicable to the issues joined in the pleadings and the issues of fact involved and that the instructions refused by the court at the request of appellants were properly refused.

It is insisted that instruction No. 4, given by the court, makes it the absolute duty of the driver of a motor car to avoid striking another car. The instruction reads as follows: ''The court instructs the jury that it is the duty of the driver of any truck or automobile to drive same on the right-hand side of the road, and to allow a proper distance on the left-hand side of his vehicle for the safe passage of any vehicle which he is meeting, and you are further instructed that it is the duty of every person driving a truck, automobile, or other such vehicles, on the highways of this state to drive same at a proper and safe speed, considering the character of the road and the traffic thereon, and the weight and load of the vehicle which he is driving, and to drive same at such

a speed as will enable him to control the vehicle and avoid striking other vehicles driven on said road.''

We think the correct construction of the instruction as given told the jury in effect that a driver of a motor vehicle should drive on the right-hand side of the road and drive his car at a proper and safe speed that would enable him to control it and avoid striking other vehicles. The law clearly imposes such duty upon the driver of a motor car. This court said in the case of *Northwestern Casualty & Surety Co.* v. *Rose,* 185 Ark. 263, 46 S. W. 2d 796, that: ''It is the rule arising from common custom and recgonized by law that it is the duty of the driver of a motor vehicle to keep to the right of the road and whether this is done or not is a matter to be considered by the jury in determining the question of negligence.''

It would extend this opinion to great length to set out all the instructions objected to and the objections made to them, but we will say after examining them particularly that none of the objections made to those given are tenable and sound. Running through the instructions that were given we find that negligence was clearly defined and the jury told that appellee was required to show by a preponderance of the evidence that appellants were guilty of negligence that solely caused the collision before a recovery could be had and that before any recovery for the death of Todd could be had the appellee must show by a preponderance of the evidence that Todd was not guilty of any negligence that caused or contributed to the collision.

We think the record reflects that the case was fairly tried under correct declarations of law, and for that reason the judgments are affirmed.