YOCUM v. HOLMES.

5-102                                    258 S. W. 2d 535

Opinion delivered June 1, 1953.

Rehearing denied June 29, 1953.

*Barber, Henry & Thurman* and *Tom Gentry,* for appellant.

*John E. Hooker* and *Conley F. Byrd,* for appellee.

ROBINSON, J. Appellee Hazel Lee Holmes, alleged widow of Thomas T. Holmes, and administratrix of his estate, recovered a judgment in the sum of $15,000 for the benefit of the infant son of the deceased Holmes who was killed when struck by an automobile operated by appellant Alford M. Yocum.

In the complaint the administratrix asked for judgment in the sum of $10,000 to compensate her personally for the loss of her husband and $5,000 for her mental anguish; also $124,654.40 for the benefit of the estate and $5,000 for the benefit of the estate for conscious pain and suffering of the deceased, and $500 for medical, hospital, and funeral expenses. The court directed a verdict for the defendant so far as the rights of the alleged widow were concerned, on the ground that there was no showing that she was ever legally married to the deceased. The jury returned a verdict for the defendant on the issue of pain and suffering on the part of the

deceased, and a verdict for the benefit of Thomas T. Holmes, Jr., son of the deceased, in the sum of $15,000.

On the morning of March 18, 1952, Thomas T. Holmes left his residence on West 16th Street in Pine Bluff, Jefferson County, at about 5 :15 A. M. to go to work. It was his custom to walk up the railroad right-of-way to Sixth Avenue and thence to the Implement Truck & Supply Company where he would catch a ride to the place where he worked. On the morning in question it was raining and Holmes was wearing black rubberized pants of a rainsuit and a dark leather jacket. There was no sidewalk; he was walking west on his right-hand side of the street. The appellant, Alford M. Yocum, was also on his way to work in his automobile, travelling west on Sixth Avenue on his proper side of the street. His automobile struck Holmes, who died a short time thereafter as a result of the injuries received, which consisted of a badly broken left leg and severe brain injuries. The automobile struck him with such force that he was knocked up onto the hood of the car, making a large dent therein, across the hood breaking off the radio aerial, and thence to the ground. Appellant earnestly contends there is no evidence of negligence on his part, and that Holmes was guilty of negligence in walking in the street in the nighttime during a hard rain while wearing a black rainsuit, and in failing to see the appellant's car when the headlights were burning brightly.

Negligence is the doing of that which an ordinarily prudent person would not do under the circumstances, or the failure to do that which an ordinarily prudent person would do under the circumstances. It cannot be said as a matter of law that it is negligence for one to walk in the street where there is no sidewalk, or to go to work when it is very dark, or to wear a black rainsuit when it is raining; nor can we say as a matter of law that all of these things considered together constitute negligence. It is not known definitely whether Holmes saw Yocum's car approaching; but in any event it was a question for the jury to say whether Holmes was negligent in failing

to get out of the street to avoid being struck by the car. Apparently Holmes and the automobile were going in the same direction; the jury could have found that Holmes did see the reflection of the lights and knew that the car was approaching, but without negligence on his part assumed that the driver of the car also saw him and would pass to his left. Whether Holmes was guilty of contributory negligence in the circumstances was a jury question.

It was also a jury question as to whether Yocum, the driver of the car, was guilty of negligence. He testified he did not see Holmes until the instant the car struck him, although the lights on his automobile were burning.

B. C. West, a city patrolman, answered a call to the scene and arrived about 10 minutes later. He testified that it was raining but he could see in the beams of the headlights of his car a distance of about half a block. Yocum makes no contention that he saw Holmes before the instant of striking him; but says that in the circumstances he was not negligent.

Jack Gragg lives about 100 feet from the place where Holmes was injured, and he heard the impact. Dr. E. Frank Reed testified that Holmes' injuries consisted of a severe contusion on the left side of his head and a compound fracture of the bones of the lower left leg; about 4 inches of bone protruded from the wound. In his opinion the force of the object which struck Holmes came from the rear.

The evidence when viewed in the light most favorable to the appellee justifies a jury finding that Yocum, the driver of the automobile, negligently failed to keep a proper lookout for other users of the street.

In *Breashears* v. *Arnett,* 144 Ark. 196, 222 S. W. 28, the appellee Arnett had come out of a picture show and crossed the street at that point; and when about 10 feet from the curb on the opposite side of the street, was struck by an automobile driven by Breashears. There was some testimony to the effect that the automobile was

being driven at a greater rate of speed than was ordinarily the custom upon the roads or streets. Appellant testified he was going about 10 miles an hour. Mr. Justice Wood, speaking for the Court, said the issues of negligence and contributory negligence are questions of fact for the jury.

In the case of *Adams* v. *Browning,* 195 Ark. 1040, 115 S. W. 2d 868, a Laura Adams, administratrix of the estate of Richard Franklin, filed suit against Browning for the negligent killing of Franklin. It developed that Browning's automobile was travelling rapidly and Franklin was walking in the same direction with his back to the car, and apparently did not see it approaching until about the time it struck him. At the close of plaintiff's testimony the defendant requested and the court gave to the jury an instruction to find for the defendant. The cause was reversed for the trial court's error in directing a verdict, and this Court said: "Under our system of jurisprudence, it is the province of the jury to pass upon the facts. It is not only their privilege but their right to judge of the sufficiency of the evidence. The credibility of the witnesses, the weight of their testimony, and its tendency, are matters peculiarly within the province of the jury. If there is any substantial evidence it is the duty of the court to submit the matter to the jury."

In *Northwestern Casualty & Surety Co.* v. *Rose,* 185 Ark. 263, 46 S. W. 2d 796, an issue was involved as to the negligence of a Mr. Rose in driving an automobile into and upon a Mr. Bonner. It was a rainy evening in November; it was dark but the street lights had not yet been turned on. Rose had passed an intersection about four car lengths "when all at once a man loomed up in front." In affirming a judgment based on the negligence of Rose, this Court said: "The jury might have inferred that, under the conditions then existing, the lights [on the automobile] were burning, and, if so, that they cast light a sufficient distance ahead to enable Bonner's presence on the street to have been discovered in time for

the driver of the car to stop the same." The Court further said: "It is the well-settled rule that the duty rests upon the driver of an automobile to exercise ordinary care in its operation, and in the exercise of such care it is his duty to keep a constant lookout to avoid injury to others. This is particularly incumbent upon him when driving on the street of a city in order to avoid injury to pedestrians, as he should anticipate their presence upon such streets and their equal right to their use. *Murphy v. Clayton,* 179 Ark. 225, 15 S. W. 2d 391; *Byrd v. Galbraith,* 172 Ark. 219, 288 S. W. 717; *Smith A. T. Co.* v. *Simmons,* 181 Ark. 1024, 28 S. W. 2d 1052; *Duckworth* v. *Stevens,* 182 Ark. 161, 30 S. W. 2d 840; *Morel* v. *Lee,* 182 Ark. 985, 33 S. W. 2d 1110."

In the case at bar, in addition to the testimony of Officer West as to being able to see one-half block in the beam of the headlights of an automobile, H. C. Clanton, who arrived at the scene immediately after Holmes was injured, testified that as soon as his lights dipped over the railroad he saw Yocum running back to a dark object in the street (the injured Holmes). Witness was probably one-fourth or one-half block away at the time. The inference deducible from this testimony is that if the witness could see Yocum running back to the dark object in the street, Yocum should have seen Holmes in the first instance. There was plainly a question for the jury.

Hazel Lee Holmes testified that she and the deceased Thomas T. Holmes were married in Camden, Arkansas, in April, 1950, and lived together as man and wife from that time until his death March 18, 1952; that Thomas T. Holmes, Jr., was born October 30, 1952, following his father's death in March of that year; that prior to her marriage to Holmes she had been married to Fletcher Matson Monday, and on cross-examination said she was divorced from Monday in Jefferson County about four years previously.

In an attempt to show that Hazel Lee Holmes was not the legal wife of Thomas T. Holmes, appellant produced as a witness M. V. Mead, Chancery Clerk of Jef-

ferson County, who testified that he had searched the court records covering the past ten years and could find no case where Hazel Lee Walker Monday had been granted a divorce from Fletcher Matson Monday; but did find a case where Daisy Mae Monday was granted a divorce from Fletcher M. Monday on May 5, 1951, which was subsequent to appellee's marriage to Holmes. The Court instructed the jury that Hazel Lee Holmes was not entitled to any damages because it had been proved she was not lawfully married to the deceased at the time of his death. The issue of whether the court erred in so instructing the jury is not raised by cross-appeal.

The trial court held that the child of a marriage, void because the wife had another living husband, was legitimate and entitled to share in his father's estate. Appellant concedes that this ruling of the court is correct as a general statement of law, but contends that there is no showing that the second marriage was solemnized under the form and in the manner prescribed by law; and for that reason the child of the second marriage is not entitled to inherit from his father. Incidentally, there was no evidence of Hazel's marriage to Monday except her testimony.

The appellee testified that she married Holmes in April, 1950, in Camden, Arkansas; her testimony on that point was sufficient to make it a jury question as to whether a marriage took place. In 35 *Am. Jur.* 318 it is said: ''The rule that the testimony of eyewitnesses to a marriage ceremony is competent to prove the marriage without the production of the certificate of marriage or accounting for its nonproduction is applied in numerous cases holding that the testimony of either of the parties to the marriage is admissible to prove the marriage,'' citing as authority a long list of cases from numerous states.

Mr. Wigmore says: *''Celebrant's Certificate or Register Not Preferred to Oral Eye-Witness.* Some heresies die a hard death. With a phoenix-like persistence they arise again and again, after repeated judi-

cial pronouncements which ought to have been final, to plague each new generation and to call for fresh incinerations. One of these is the supposition that, as between possible sorts of eye-witness evidence, the *celebrant's certificate* or *register-entry* is preferred to the *oral testimony* of celebrant, clerk, or bystander . . . But there is no such rule. The marriage-certificate was at common law probably not even admissible . . . and it has always been recognized that both certificate and register were of inferior value, inasmuch as further evidence of the identity of the parties named may be required:" *Wigmore on Evidence,* 3d Ed., § 2088.

Appellee testified she married Holmes in Camden, Arkansas, in April, 1950, and lived with him as man and wife to the day of his death some two years later. Where the marriage is established by evidence, it is presumed to be regular and valid and the burden of proof is upon the party attacking it. *Royal* v. *Mosaic Templars of America,* 143 Ark. 596, 219 S. W. 752.

Even if she were not divorced from Monday at the time of her alleged marriage to Holmes, if her second marriage was in accordance with the laws of the state, a child of that marriage is an heir of his father. *Bruno* v. *Bruno,* 221 Ark. 759, 256 S. W. 2d 341. See, also, *Evatt* v. *Miller,* 114 Ark. 84, 169 S. W. 817, L. R. A. 1916C, 759, and *Cooper* v. *McCoy,* 116 Ark. 501, 173 S. W. 412.

Appellant contends that the case at bar is controlled by *Martin* v. *Martin,* 212 Ark. 204, 205 S. W. 2d 189, but there is a distinction between the cases. The Martin case was from the Chancery Court and tried *de novo* in this Court, where it was held that the great weight of the evidence proved John Martin was never married to Lena Watkins; whereas in the present case the uncontradicted evidence is that the mother and father of Thomas T. Holmes, Jr., were married in Camden in April, 1950. This being true, the fact that the mother may not have been divorced from her former husband would not be material insofar as the legitimacy of the child is concerned. Ark. Stat. § 61-104 provides: "The

issue of all marriages deemed null in law, or dissolved by divorce, shall be deemed and considered as legitimate."

Next, appellant contends that under the pleadings in the case no damages were asked for Thomas T. Holmes, Jr. The complaint alleges damages of $124,-654.40 and there was a prayer for judgment in that sum. In addition to the item mentioned, it was alleged that the widow had been damaged in the sum of $10,000 by the death of her husband and $5,000 for her mental anguish; $5,000 for the estate for the conscious pain and suffering of the intestate, and $500 for medical, hospital, and funeral expenses. If the $124,654.40 item were removed from the pleadings, still there would be an allegation of damages and prayer for judgment for everything that the estate could possibly be entitled to recover. Therefore the $124,654.40 item can be construed as a sum asked for the benefit of Thomas T. Holmes, Jr. Otherwise there is no explanation for that allegation of damages. If the trial court had not considered this allegation in the complaint sufficient so far as the minor son was concerned, the complaint could have been treated as amended.

Ark. Stat. § 27-1160 provides: "The Court may, at any time, in furtherance of justice, and on such terms as may be proper, amend any pleadings or proceedings by adding or striking out the name of any party, or by correcting a mistake in the name of a party, or a mistake in any other respect, or by inserting other allegations material to the case . . . the Court must, in every stage of an action, disregard any error or difficulty in the proceedings which does not affect the substantial rights of the adverse party; and no judgment shall be reversed or affected by reason of such error or defect."

Affirmed.

Justices GEORGE ROSE SMITH and WARD dissent.