HARALSON, ADMINISTRATRIX *v.* JONES TRUCK LINES.

5-418 270 S. W. 2d 892

Opinion delivered June 14, 1954.

[Rehearing denied October 4, 1954.]

814

 

*Gordon & Gordon,* for appellant.

*Louis Tarlowski* and *J. M. Smallwood,* for appellee.

GEORGE ROSE SMITH, J. This is an action for wrongful death, brought by the appellant as administratrix of the estate of Carl Brady Charles. The three defendants are the Jones Truck Line, its employee Jack Fulfer, and Clifton Duvall. At the close of the plaintiff's proof the trial court directed a verdict for the defendants. The question is whether the plaintiff made a case for the jury.

At the trial the plaintiff called the defendants Fulfer and Duvall as witnesses, and she now relies principally upon their testimony. These two men, who appear to have testified with complete candor, are in agreement as to the manner in which Charles met his death.

On the night of April 24, 1953, Fulfer was driving one of his employer's trucks west on Highway 64. For some distance Duvall, in his own truck, had been following Fulfer, awaiting an opportunity to pass him. On a long straight stretch near the town of Blackwell the two trucks met a car coming from the opposite direction. Both men dimmed their headlights. As soon as the approaching car had gone by, Fulfer, with his own headlights still dimmed, flashed his rear clearance lights. Both witnesses testify that this is a signal, well understood among truck drivers, by which the leading driver invites the other to pass.

Duvall, acting upon this signal, entered the left-hand traffic lane and overtook Fulfer's truck; but in doing so he did not switch his headlights to the bright beam. When the vehicles were abreast the two drivers for the first

time saw Charles, who was walking west on the left side of the highway, with his back to the oncoming trucks. Both drivers swerved to their right in an effort to avoid an accident, but the extreme left-hand side of Duvall's truck hit Charles and killed him. The point of impact was two or three feet from the left-hand edge of the pavement.

An issue common to all three defendants is whether Charles was guilty of contributory negligence as a matter of law. We cannot say that he was. Pedestrians as well as motorists are entitled to use the public highways; each must act with regard to the presence of the other. *Oliphant* v. *Hamm,* 167 Ark. 167, 267 S. W. 563; *Morel* v. *Lee,* 182 Ark. 985, 33 S. W. 2d 1110. One who walks on the right-hand side of the street, with his back to traffic, is not necessarily guilty of contributory negligence. *Yocum* v. *Holmes,* 222 Ark. 251, 258 S. W. 2d 535. The plaintiff's position is even stronger, for Charles was walking on the left side of the highway, as recommended by the safety rules of the Highway Department. In these circumstances it was for the jury to say whether Charles was contributorily negligent.

The remaining question is whether the proof would have supported a finding of negligence on the part of the truck drivers, or either of them. With respect to Duvall, whose vehicle actually struck Charles, little need be said. His lights were still dimmed when he first saw the decedent, who was then only twenty or twenty-five feet away. The law requires that the bright headlight beam be of sufficient intensity to reveal persons at a distance of at least 350 feet. Ark. Stats., 1947, § 75-713. The jury would have been justified in concluding that Duvall was negligent either in failing to brighten his lights or in failing to keep a proper lookout.

Fulfer's truck, on the other hand, did not come in contact with Charles. Hence this defendant and his employer insist that they violated no duty owed to the decedent, since their vehicle remained continuously on its own side of the highway. This argument would be highly persuasive were it not for the fact that Fulfer signaled

the trailing vehicle to pass him. We think this fact to be of controlling importance in the case.

Although we all know the signal in question to be widely used by truck drivers, the exact question now presented does not seem to have been considered in any reported decision. In principle, however, it is not difficult. We have defined a negligent act as one "from which an ordinarily prudent person . . . would foresee such an appreciable risk of harm to others as to cause him not to do the act, or to do it in a more careful manner." *Hill* v. *Wilson,* 216 Ark. 179, 224 S. W. 2d 797. It seems perfectly plain that the driver who gives this signal cannot invariably be absolved of all responsibility in the matter. If, for example, the leading driver should reach the crest of a hill and should give the passing signal when he alone could see a car approaching dangerously close from the other side, no one would regard the giver of the signal as wholly blameless if a head-on collision resulted from his action. In that situation an ordinarily prudent person would certainly foresee an appreciable risk of harm to others.

In the case at bar Fulfer testified that he would not have flashed his clearance lights if he had seen a man in the road. Yet he did give that signal without having returned his headlights to the bright position. The proof is that the dim beam is lower than the bright one and is directed to the right, so that the darkest part of the highway is to the left. That is where Charles was walking when he was struck. There was substantial evidence from which the jury might have found that Fulfer's failure to brighten his lights before signaling to Duvall involved a foreseeable risk of injury to others, a risk that an ordinarily prudent man would not have taken.

Nor does it matter that Fulfer was under no legal duty to give any signal at all. As Judge CARDOZO observed in the leading case of *Glanzer* v. *Shepard,* 233 N. Y. 236, 135 N. E. 275, 23 A. L. R. 1425: "It is ancient learning that one who assumes to act, even though gratuitously, may thereby become subject to the duty of

acting carefully, if he acts at all." Even though Fulfer's invitation to Duvall was gratuitous the law required that his conduct be characterized by ordinary care.

Reversed.