ARNITA DENISE DIX ET AL. *v.* PATRICIA
MAE SPAMPINATO ET AL.

[No. 977, September Term, 1974.]

*Decided September 8, 1975.*

The cause was argued before THOMPSON, MOYLAN and MENCHINE, JJ.

*Francis N. Iglehart,* with whom was *Michael J. Lambros* on the brief, for appellants.

*James E. Gray* for appellee Patricia Mae Spampinato and *William A. Hegarty* for appellee Jeanette Horak.

MENCHINE, J., delivered the opinion of the Court.

Arnita Denise Dix (hereinafter referred to either as appellant or pedestrian) was a 1971 graduate of Western High School in Baltimore City, who had earned a scholarship to Bentley College in Waltham, Massachusetts. She had gained employment for the summer months of 1971 as a nurse's aide in the Bent Nursing Home, located on the west side of Reisterstown Road in Reisterstown, Maryland.

On August 27, 1971, at about 3:30 p.m., she alighted from a public transportation bus on the east side of the Reisterstown Road at a point south of the place of her employment. The bus stopped somewhat north of the ordinary bus stop because of puddles of water left in the road at that place. At that point Reisterstown Road is a four lane dual highway, with two marked lanes northbound and two marked lanes southbound, divided by double line yellow markings. There is no grass or concrete median strip. Each lane is about 10 feet wide.

Very seriously injured while attempting to cross the highway, pedestrian and her father, as next friend during a period of infancy, brought suits in the Circuit Court for Baltimore County for damages for personal injury and for medical and hospital expenses against Patricia Mae Spampinato, operator of a motor vehicle that struck her, and against Jeanette Horak, operator of a vehicle that had come to a stop upon the highway to permit her to pass. The crossing point was between intersections. There was a marked crosswalk to accommodate the passage of pedestrians about 200 feet south of the accident scene. At the con-

clusion of the plaintiffs' cases the trial judge granted separate motions for directed verdict filed by the defendants. From the judgments against them thereafter extended Arnita Denise Dix and her father have appealed to this Court.

The duty of an appellate court on appeal in such circumstances was clearly and succinctly stated in *Campbell v. Jenifer*, 222 Md. 106, 110, 159 A. 2d 353, 355:

> "In a case such as this, where the trial court has granted either a motion for a directed verdict, or a motion for a judgment *n.o.v.*, this Court must, in determining whether the ruling was proper, resolve all conflicts in the evidence in favor of the plaintiff and assume the truth of all evidence and such inferences as may naturally and legitimately be deduced therefrom which tend to support the right of the plaintiff to recover. Or, as it is often stated, the evidence must be considered in the light most favorable to the plaintiff."

## The Facts

Pedestrian's own description of her crossing was as follows:

> "When it [northbound traffic] was clear I crossed to the centerline, I looked up, and the driver [Jeanette Horak] of the [Volkswagen] bus waved to me to go across. I looked up to make sure that the bus had come to a stop, and then I started to walk out from the bus. * * * She [operator of the Volkswagen] looked at her hand, and she waved for me to cross the street. * * * [She] moved it from left to right. * * * the next thing I remember I was on the ground."

The record shows the following inquiries by and her responses to, the trial court:

> "THE COURT: Young lady, did you ever see the

vehicle which you now claim struck you?

THE WITNESS: No, sir.

THE COURT: Was there anything to prevent you from seeing it if you had looked?

THE WITNESS: Well, while I was standing on the centerline the Volkswagen bus —

THE COURT: Yes. But after you started to move forward you would have to pass in front of the Volkswagen before you got to the next traffic lane, right?

THE WITNESS: Yes, sir.

THE COURT: As you were passing in front of the Volkswagen bus did you look to your right to see whether or not traffic was proceeding south in the other lane of traffic?

THE WITNESS: I don't remember, judge. I remember walking out from the centerline in front of the bus, and that's all.

The Volkswagen (hereinafter called "standing vehicle") was being operated by Jeanette Horak. The pedestrian walked in front of and continued past the standing vehicle, and was struck by a Buick automobile (hereinafter called "moving vehicle") being operated by Patricia Mae Spampinato. The pedestrian, 5 feet 3 inches tall, was unable to see over the top of the standing vehicle.

The following excerpts from the testimony of the operator of the moving vehicle, called as a witness by appellant, give her version of the incident:

"Q  At that time can you recall what the weather conditions were?

A  Yes, sir, it was raining very hard.

Q   And can you recall passing Caraway Road southbound in the right-hand lane?

A   Yes, sir.

Q   And what did you observe next?

A   Well, when I was riding down Reisterstown Road, and I came to Caraway Road, I'm not sure of the distance, but in the left-hand side, the left lane was a Volkswagen bus, I didn't see her traveling, I just saw her stopped there.

Q   And when you made that observation what action did you take?

A   Well, I was wondering why she had, why it was there, why she had stopped, there's no red light, there's no way to turn, and with it raining, the first thing that came to my mind was that she had stalled or —

Q   Could you give us your approximate speed at that time, if you can recall?

A   Yes, sir. I went, I was very, I was wondering why she was there, so immediately I looked down, which my husband has told me to do so many times — on the left-hand side there are the red lights for generators, and things like that, that go on, which has happened to me before, because — so I looked there to see if everything, you know, I looked down to see if everything was okay, and that's when I happened to notice how fast I was going.

Q   And how fast were you going?

A   It was between twenty and twenty-five.

* * *

Q   What I was getting at was whether the fact that this Volkswagen bus was stopped in the left-hand lane, whether that caused you to look down at the instruments on your dashboard?

A   Sure, I was very conscious, I was wondering —

you know, you see a car stopped in the left lane, you wonder why. But I had cars behind me, and I never thought ever that there was anybody there.

Q   How far behind you were the cars following you, if you can recall?

* * *

A   It wasn't bumper-to-bumper. When you look out it's a busy, you know, highway, but when you look out there are cars behind you. I guess a couple car lengths, I guess it would be something like that; it wasn't, you know, bumper-to-bumper.

* * *

Q   And then what happened next, Mrs. Spampinato?

A   Well, I passed the Volkswagen bus, and as I did I heard a thump. And I said, oh my goodness, I wonder what that was or what that is? And I looked in my mirror, and the traffic had stopped, of course I stopped right away. And I was afraid to stay in the middle of the road, so I backed back a little and got, and I was in front of McDonald's. And I sat there, and got out, that's where I parked my car, and then I got out, and then that's when I saw Miss Dix.

* * *

Q   Her body was in the left lane?

A   Yes, sir."

These excerpts from the record depict most favorably the testimony of an eyewitness called to the stand by appellant:

"Q   And you say you saw a lady?

A   Yes.

Q  What did you observe after that?

A  She was walking north on the side of the road, and began to cross into the highway, and she crossed to the center strip of Reisterstown Road.

Q  Yes?

A  And then she stood there.

Q  What did you observe after that, Mrs. Spurrier?

A  I glanced to my left, to McDonald's, and when I looked back there was a Volkswagen bus parked at the centerline.

Q  In what direction was the Volkswagen bus facing?

A  South.

Q  Yes?

A  And the girl was still on the center strips.

Q  And what did you see next?

A  I saw the girl look towards the Volkswagen bus, and then she started to move, to leave where she was standing, and I saw a white car pass by, and after the white car passed by I saw the girl rolling in the road.

* * *

Q  Let me go back a step. The Volkswagen bus was stopped in which lane, southbound lane, if you can remember?

A  The left.

Q  The left-hand lane?

A  Yes.

Q  With reference to that lane, can you recall observing which lane the lady was rolling in after the white car passed by?

A  She was in the left lane.

Q  Her body was in the left lane?

A  Yes.

Q   Could you see, from where you were seated in your car could you see any point of contact between the lady's body and the white car that passed by?

A   I didn't see it when they came in contact, no.

Q   Would you describe for the jury the manner in which the lady crossed the highway to the centerline and also the manner in which she moved away from the centerline after looking up at the Volkswagen bus?

A   From the time she left the side of the road she was walking on an angle towards the yellow strip.

Q   After she got to the yellow strip, and you say she looked up at the Volkswagen bus and then started again, what direction was she walking in?

A   I couldn't be positive of that; she just sort of took off, and I couldn't say what angle.

THE COURT: Would you tell the jury, please, Mrs. Spurrier, precisely what do you mean by she took off?

THE WITNESS: Well, in the beginning she was walking slow, and when she, as I say, took off, she wasn't walking slow, she started out fast.

Q   The second time, Mrs. Spurrier when you say she started out fast, was she walking or was she running, as far as you could see?

A   As far as I could see, she wasn't walking but she wasn't running.

Q   Could you describe the weather conditions at the time, please.

A   Yes, it was raining very bad.

* * *

Q   Could you describe the visibility at the time.

A   I'd say it was poor visibility.

\* \* \*

Q   \* \* \* Can you describe for me as best you can in as much detail as you can the manner in which this young lady was proceeding across the southbound lanes?

A   Do you mean after she left the center?

Q   Right after she left the centerline.

A   I don't know how to explain it.

THE COURT: I would gather from what Mrs. Spurrier has told us that it was something between a walk and a run. Is that right?

THE WITNESS: Yes. It was like she — she wasn't running but she was going fast, but she wasn't actually running.

Q   Did you at any time, Mrs. Spurrier, see the pedestrian stop again once she started to look for southbound traffic in the lane in which Mrs. Spampinato's vehicle was traveling?

A   I didn't see her again until she was on the ground.

Q   Well, did she have one continuous motion until you saw her on the ground or saw the car pass her, or did she stop?

A   She didn't stop, she just kept going.

\* \* \*

Q   Could you see the front of that vehicle as it was southbound?

A   Yes.

Q   Did you see the front of that vehicle come in contact with the pedestrian?

A   No.

Q   What I am trying to find out, and I don't think it's clear to the jury, is why you did not see what part of the vehicle, the white vehicle you described, come into contact with the pedestrian or vice versa. Can you describe for me, and tell the jury, why you couldn't tell precisely where the point of impact was?

A   Well, I believe it's because the girl was a certain distance from the Volkswagen, and when the white car passed at a certain time I couldn't see the girl any longer as the car got, the white car got so far past.

Q   Are you saying that the white car was between where you were and the pedestrian was?

A   Right.

Q   Did you at any time — let me ask you this: Was that white car in it's own lane?

A   Yes.

Q   Did it cross the centerlines, the white strips, and go into the lane the Volkswagen was parked in?

A   No."

The left sideview mirror of the moving vehicle was loose and hanging down after the accident. The moving vehicle bore no evidence of other damage.

### The Law

Article 66½, § 11-503, Crossing at Other Than Crosswalks, in pertinent part reads as follows:

"(a) Every pedestrian crossing a roadway at any point other than within a marked crosswalk or within an unmarked crosswalk at an intersection shall yield the right-of-way to all vehicles upon the roadway."

In Subtitle 1. of Article 66½, Words and Phrases Defined, § 1-175 reads as follows:

"Right-of-way means the right of one vehicle or pedestrian to proceed in a lawful manner on a highway in preference to another vehicle or pedestrian."

There can be no doubt that the movement of a pedestrian from a place of safety at the centerline of a highway into the path of a moving vehicle proceeding in a lawful manner on the highway ordinarily would constitute contributory negligence as a matter of law.

In *Vokroy, Admr. v. Johnson*, 233 Md. 269, 196 A. 2d 451, it was said at 273-74 [453]:

"This Court has often held it to be contributory negligence as a matter of law for a pedestrian to leave a place of safety for a position of peril between street crossings, thereby contesting the right of way of vehicular traffic then in the street. *Leonard v. Hanson*, 225 Md. 76, 169 A. 2d 459; *Campbell v. Jenifer*, 222 Md. 106, 111, 159 A. 2d 353, and cases there cited."

The crux of appellant's contention in the subject case, however, is that this well established rule of law is not available as a bar to the liability of either the operator of the standing vehicle or the operator of the moving vehicle because of the existence of these unusual facts, namely:

(1) that the standing vehicle came to a stop to permit the pedestrian to complete her crossing of the highway;

(2) that the operator of that vehicle waved to her to cross the highway; and

(3) that the operator of the moving vehicle, alerted to appellant's danger by one or both of those facts, did nothing to avoid harming her.

We have found no Maryland case directly in point. Cases in other jurisdictions against operators of standing or moving vehicle or both, under circumstances akin to the subject case are relatively few, and are conflicting. In the

subject case the trial judge stated that the separate motions for directed verdicts were granted because he found appellant to be contributorily negligent as a matter of law. Some of the cases in other jurisdictions hereinafter discussed, wherein verbal directions or hand signals by operators of standing vehicles had been given to pedestrians or to other vehicles, dealt with both the primary and the contributory negligence aspects of their facts. We think both aspects appropriate for consideration where the allegedly negligent actions of the parties defendant are so markedly different in character.

We shall first set forth those decisions where it was concluded that the liability issue was for the jury.

In *Spagnola v. New Method Laundry Co.*, 152 A. 403 (S. Ct. of Errors of Conn., 1930) a pedestrian was struck by an automobile as she passed in front of a street car. The motorman had motioned to her to pass in front of the standing car. The operator of the street car was not sued. After holding that the negligence of the automobile driver was a jury question, the Court addressed itself to the issue of the contributory negligence of the pedestrian, saying at 404:

> "* * * It is reasonably clear from these circumstances that the first and only opportunity the plaintiff had to know of the approach of the automobile was while she was covering the two feet of distance beyond the trolley car. She had the assurance of the motorman that she could cross in front of his car, and it cannot be said that she did not act the part of a reasonably prudent person in doing so. The trial court felt that she should have seen the automobile and that her failure to do so was negligence as matter of law. But she had the right to assume that no automobile would be running at such speed within two feet of the side of a standing trolley car that it could not be stopped in time to avoid a collision with her. It cannot be said as matter of law that she was bound, under the

circumstances, to stop and peer around the front of the trolley car before stepping into the street beyond for two feet. Naylor v. Haviland, 88 Conn. 256, 259, 91 A. 186; Wennell v. Dowson, 88 Conn. 710, 712, 92 A. 663. Even if, with the utmost vigilance, the plaintiff had been able to see the approaching automobile during the fraction of a second she required to cover the two feet, it is quite evident she could not, even then, have avoided the collision. A statement made by the trial court, when denying the defendant's motion for a directed verdict, that this was a matter which it believed should be left to the jury as a question of fact rather than to the court as a matter of law, was, we think, the correct view."

Under facts quite similar to *Spagnola, supra,* the Supreme Court of Rhode Island in the case of *Cunningham v. Walsh,* 163 A. 223, said at 225:

"As her view was obstructed by the car and as she was leaving a place of safety to go into a place of possible danger, the circumstances were such as to require her, for her own safety, to be alert and cautious. At the first opportunity she was bound to look for street traffic before going into the part of the street between the curbing and the trolley car. Apparently she was struck by the truck before she had taken more than one step beyond the side of the trolley car and before she could stop or look toward the rear of the car. Judging from the posture of her body after she was knocked down, it is evident that the truck was being driven close to the side of the trolley car. It was not negligence as a matter of law for her merely to extend a part of her body beyond the side of the car. She was entitled, if necessary, to a reasonable opportunity to move a sufficient distance into the street to enable her to observe that part of the street upon which she must pass to enter the trolley car.

"In the recent case of Spagnola v. New Method Laundry Corp., 112 Conn. 399, 152 A. 403, in similar circumstances, it was held that a pedestrian was not bound as a matter of law to stop and peer around the front of a trolley car before stepping into the street beyond.

"On a motion to direct a verdict for defendant, all reasonable inferences in favor of plaintiff must be drawn from the evidence. Jacobs v. United El. Rys. Co., 46 R. I. 230, 125 A. 286. The question of contributory negligence commonly is a question of fact to be determined by a jury, and a verdict should not be directed for a defendant on this ground if, on any reasonable view of the evidence, a plaintiff is entitled to recover."

In *Armstead v. Holbert*, 122 S.E.2d 43 (S. Ct. of App., W. Va., 1961), an action against the operators of both standing and moving vehicles, although the decision largely dealt with issues not relevant to the subject inquiry, it is clear that the decision inferentially determined that where the operator of a motor vehicle has waved a pedestrian to pass in front of his vehicle and the latter is struck by another vehicle in his continuing movement across the highway, the issues of negligence and contributory negligence of the parties are matters properly left for determination by the jury.[1]

In *Sweet v. Ringwelski*, 106 N.W.2d 742 (S. Ct. Mich., 1961), a 10 year old pedestrian had stopped in the center of an intersection at a crosswalk because of the approach of traffic from her right. A truck and other vehicles in the center lane of traffic stopped. The driver of the truck waved to the child to cross in front of him. The child was struck by a vehicle traveling in the curb lane of the highway. On those facts the Court in its discussion of the negligence of the operator of the standing vehicle and the contributory negligence of the pedestrian said: (at 744-46)

---

1. In this case the pedestrian was 13 years of age. The accident occurred at an intersection.

"The action of defendant Thompson [truck driver], claimed as negligence by plaintiff, was his waving her on without having ascertained that she could proceed across the rest of the intersection in safety, without danger from other approaching vehicles. In Hart v. Ludwig, 347 Mich. 559, 564, 79 N.W.2d 895, 898, this Court quoted from 38 Am. Jur., Negligence, § 17, p. 659, as follows:

' "The law imposes an obligation upon everyone who attempts to do anything, even gratuitously, for another, to exercise some degree of care and skill in the performance of what he has undertaken, for nonperformance of which duty an action lies." '

"Reference to that same American Jurisprudence section discloses the further statement that:

'The good Samaritan incurs a responsibility avoided by those who "pass by on the other side." One person seeing another in distress may or may not be under legal obligation to afford him relief, but if he does undertake it he is bound to act with reasonable prudence and care, to the end that if his effort be unavailing it shall at least not operate to increase the injury which he seeks to alleviate.'

\* \* \*

"We do not believe that the court should have determined, as a matter of law, the intended meaning of Thompson's waving action and, more important, the thought that it might reasonably have been anticipated would be conveyed thereby to the 10-year-old girl. These, it seems to us, were questions of fact for the jury. The answers would be determinative of the question of Thompson's negligence.

\* \* \*

"* * * we conclude that the question whether her proceeding, in the fashion she did, continued to be caused by Thompson's action, or whether that had been superseded by intervening negligent action of plaintiff, presented a question of fact for the jury. And so, also, for the question of whether Thompson should or might have foreseen such consequence, that was for the jury to say. If plaintiff's subsequent act was reasonably foreseeable, it would not, of course, constitute such intervening conduct as to terminate the effect and legal consequences of defendant's antecedent negligent act.[2] "

See also: *Gamet v. Jenks*, 197 N.W.2d 160 (C. A. Mich., 1972), where the Court said at 164:

"In Michigan, a driver who waves a pedestrian across a street where he is hit by another driver may be liable for the pedestrian's injuries. Sweet v. Ringwelski (1961), 362 Mich. 138, 106 N.W.2d 742. In *Ringwelski*, the Supreme Court indicated that it is not for the trial judge to decide the intended meaning of such a wave to a pedestrian. The answer is for the jury and determines liability.[3] "

In *Riley v. Board of Education*, 223 N.Y.S.2d 389 (S. Ct., App. Div., 3rd Dept., 1962), the Court sustained judgments

---

2. The Court held also that the issue of the negligence in the operation of the moving vehicle was a matter for the jury as in possible violation of an ordinance regulating pedestrian and motor vehicle movements at an intersection.

3. As to the primary negligence of the driver of the moving vehicle, however, the Michigan Court said at 163-64:

"The evidence indicates that he was driving in a lane of traffic he had a right to be in. He slowed to five miles per hour on seeing defendant Jenks' brake lights go on and stopped almost immediately after the impact. There is no supporting evidence to indicate that he should have been aware of plaintiff's presence in the street. On seeing defendant Jenks' brake lights go on, he proceeded with caution. He is not, however, bound to anticipate that a minor will come loping into his lane of traffic when he is unaware of the child's presence."

recovered against the operators of both the standing vehicle and the moving vehicle. As to the moving vehicle the court found that excessive speed gave rise to a jury question as to the negligence of its operator. As to the standing vehicle the Court said: (at 391)

> "We likewise find the defendant McGinnis guilty of negligence in the operation of her automobile. This teacher, apparently acting as a Good Samaritan, invited the children to ride in her privately owned automobile rather than to wait for a returning school bus. When she reached the vicinity of the child's home and the decedent alighted from the car, she undertook to direct him across the road and in so doing, she apparently confused the little boy so that he started to cross and into the path of danger and death. The affirmative act of waving her hand to direct the discharged passenger, under the circumstances, was negligence. There was evidence for the jury to determine that Miss McGinnis was at fault in the manner in which she operated and controlled her automobile."

The Court summarily declared that there was "no evidence of contributory negligence on the part of the decedent." The decedent was an eight year old child.

In *Wulf v. Rebbun*, 131 N.W.2d 303 (S. Ct. Wisc., 1964), although the question arose by demurrer to the declaration, the Court posed the issue as follows: (at 305)

> "Specifically, can an operator of a motor vehicle parked along a curb be negligent in signalling another motorist to proceed out of an alley in front of him and into the street."

The majority of a divided Court then declared: (at 306)

> "We believe the reasonable inferences from the pleadings alleged an assumed duty owing to the plaintiff which the truck driver breached and the

negligence was a substantial cause of the plaintiff's injuries. Admittedly the driver of the American Motors truck had no duty to signal Yenter. In fact, since the truck was parked as distinguished from stopped along the curb it could be inferred there would be no reason to signal Yenter he could proceed in front of the truck without hazard. Although one may have no duty to perform an act, if he attempts to do something to another even although gratuitously he must exercise reasonable care. Firkus v. Rombalski (Wis.1964), 130 N.W.2d 835; Prosser, Law of Torts, p. 339, sec. 54, ch. 10, Affirmative Conduct; 38 Am.Jur., Negligence, p. 569, sec. 17. The oft-quoted rule was aptly and simply stated by Judge Cardozo in Glanzer v. Shepard (1922), 233 N.Y. 236, 135 N.E. 275, 276, 23 A.L.R. 1425, '* * * It is ancient learning that one who assumes to act, even though gratuitously, may thereby become subject to the duty of acting carefully, if he acts at all. * * *' "

added: (at 307)

"The ability to foresee future harm by the person signaling and the fact of such ascertainment lends meaning to the signal and to the reasonable interpretation of what the signal meant to the recipient."

and finally concluded: (also at 307)

"It may be true as stated by the trial court and argued by the respondent that the signal given by the American Motors' driver cannot relieve Yenter of his duty to maintain a proper lookout and that his failure in this regard was the real cause of the accident."

A concurring opinion by two justices imposed the caveat: (at 308)

"[If] the evidence at trial will disclose that the

truck driver was seated in the driver's seat with his back to the Rebbun car approaching from the south. This being the situation, he would not be chargeable with knowledge of traffic approaching from his rear, and the case should be governed by Devine v. Cook (1955), 3 Utah 2d 134, 279 P.2d 1073, 1075.[4]

A dissenting justice said: (at 308)

"I agree with the opinion of the trial judge, who stated:

'I think it unreasonable to assume in this kind of a situation as alleged specifically on the facts in this complaint, that the driver did any more than guarantee that the vehicle that he was operating would not place the Yenter vehicle in jeopardy.'

"A complaint which alleges that a driver was negligent in signalling another operator to proceed should not be construed (even on demurrer) to represent the former's warranty that other traffic will yield. Fairly interpreted, such a signal constitutes an invitation to proceed ahead of the one giving the signal; it is not a guarantee that the highway is free of all other potential dangers."

Other cases have held it proper to withdraw the issue of liability from the jury in such circumstances.

In *Harris v. Kansas City Public Service Co.*, 297 P. 718 (S. Ct. Kan., 1931), the motorman of a standing street car signaled to a pedestrian to cross in front of the car. The pedestrian passed in front of the standing car and was struck by a street car moving in the opposite direction. The Court, after declaring: (at 719)

"His [motorman's] signal to plaintiff could mean no more than an assurance that he would not start his

---

4. Discussed *infra*.

100

car and catch her while she was passing between his car and the one four feet in front of it."

then discussed factually dissimilar cases and ruled: (at 721)

"Under these well-considered precedents, the plaintiff was guilty of contributory negligence as a matter of law, * * *."

In *Charles v. Sullivant*, 159 So. 756 (Ct. of App., La., 1935), a pedestrian crossing a street at an intersection was signalled to pass in front of a standing street car. As she did so she was struck by a motor vehicle passing the side of the standing car. Suit was instituted against the motorist only. The Court said at 757:

"In the instant case, plaintiff could have peered around the side of the street car before crossing the roadway, and her failure to do so was negligence which must prevent her recovery, regardless of the negligence of defendant."

In *Hill v. Wilson*, 268 P. 2d 748 (Dst. Ct. of App. 2nd Dst. Div. 3, Cal., 1954), a pedestrian allegedly relying upon verbal directions of a bus driver, walked in front of the bus and into the side of a moving vehicle. Suit was instituted against the operator of both standing and moving vehicles. On the issue of contributory negligence the Court said at 749:

"Plaintiff's testimony developed a clear case of contributory negligence. There was no marked or unmarked crosswalk at the point where plaintiff started to cross 58th Street. He had to go west to Central, then south to Slauson. He alighted from the north side of the bus. There was nothing to prevent him from walking to Central Avenue on the north side of 58th Street and crossing at the intersection. Passengers who were transferring to a bus to be taken at Central and Slauson would naturally have taken that course. The bus driver told plaintiff to follow the other passengers.

Although plaintiff testified that some of them crossed 58th Street at the point where the bus was stopped, there was no evidence that the bus driver told plaintiff to follow anyone across the street. However, plaintiff stepped out two feet in front of the bus and two feet beyond it and walked into the side of an automobile. Since there was no crosswalk there it was plaintiff's duty to yield the right of way to passing automobiles. Vehicle Code, § 562; Sanal v. Meador, 108 Cal.App.2d 820, 239 P.2d 908. He did not do this. He could have looked to the east while he was still protected by the bus. He did not have to walk out into a position of danger, one from which, as he said, he could not escape after he saw the car. It is clear that he was still moving when he collided with the car since he was not struck by the front of it, and the car did not change direction."

On the issue of the primary negligence of the operators of the moving and standing vehicles, the Court said at 750:

"The [bus] driver did not direct plaintiff to cross the street where there was no crosswalk, and even if he had done so it would have been a mere act of courtesy, and not in the performance of any duty owed to plaintiff. He was a working man, not a child.

"Defendant Wilson had a right to rely upon observance of the law by pedestrians, and, until he knew, or in the exercise of ordinary care would have known that he would not be given the right of way by pedestrians as he passed the bus, he had a right to assume that they would yield him the right of way. We have, then, the case of a man driving a car at a speed which enabled him to stop in a car's length, and alert to his surroundings, charged with negligence by a pedestrian who, in violation of his duty to yield the right of way, walks out suddenly from in front of a standing bus and into the side of the car. Since the streets do not belong exclusively

to pedestrians, and they have a duty to obey the law equal to that of motorists, the uncontroverted facts we have related made it the duty of the court to relieve the motorist of responsibility without undue delay. The judgment of nonsuit was proper."

In *Devine v. Cook*, 279 P. 2d 1073 (S. Ct. Utah, 1955) a truck driver whose vehicle was stopped at the centerline of an intersection, signaled to the operator of an automobile that had stopped at the intersecting street. The automobile, in compliance with the signal, moved past the front of the truck and was struck by an automobile moving past the side of the stopped truck. The trial judge had permitted the case to go to the jury as to the truck driver and its owner. The appeals court reversed upon the ground of the absence of primary negligence, saying at 1082:

"This Court also concludes that the Trial Court committed error in refusing to grant the motion of the defendant W. S. Hatch Company, Inc. for a directed verdict. The motion should have been granted, because it appears from the record that the plaintiffs by a preponderance of the evidence, or by any evidence, failed to prove that the defendant Hatch committed any act of negligence which caused or contributed to the cause of the accident. It is to be recalled that the only act or omission on the part of Hatch Co. was that the driver of the Hatch vehicle, as testified to by Mrs. Cook and Mrs. Hutchings, by signal or some motion directed Mrs. Cook to proceed. We do not believe that it is the law, that the giving of such a signal was an act of negligence on the part of the driver. All the signal amounted to, if given, was a manifestation on the part of Metcalf [truck driver] to Mrs. Cook that as far as he was concerned Mrs. Cook could proceed. At the most all he did was to signal to Mrs. Cook and indicate, as far as Metcalf was concerned, he yielded her the right-of-way. She could see that he was on the left side of the cab of his truck and

therefore in no position to see, or to give her any assurance, that there was no traffic approaching upon the right of his truck from the rear."

The Court supplied the following caveat to its rule at 1083:

"In concluding that the Trial Court committed error in not granting the defendant W. S. Hatch Company, Inc. motion for a directed verdict, we do not mean to say, nor to be understood as saying, that the decision reached in this case would be or should be applied to all cases involving signals or motions given by drivers of vehicles to others. It is possible that under certain conditions upon certain highways, such as hills or in the nighttime, a driver of a motor vehicle in signalling a car following such a vehicle to proceed, might, by such a signal or conduct on the part of the driver, be responsible for an accident in which the person relying upon such signal to proceed became involved."

In *Van Jura v. Row,* 191 N.E.2d 536 (S. Ct. Ohio, 1963), a motorist, planning to make a midblock left turn across the three opposing lanes of a highway, was signaled across by a truck driver stopped in the middle lane. There was no traffic in the inner lane. As the motorist passed in front of the truck there was a collision with a motor vehicle moving in the curb lane of the highway. The truck driver was not a party to the action, his identity not being known. In the course of its opinion the Court discussed the decisions in *Devine v. Cook, Sweet v. Ringwelski,* and *Armstead v. Holbert,* all *supra,* saying at 538-39:

"A search of the reported cases in Ohio does not disclose that the fact situation herein has come before the courts of this state. Our attention has been called by counsel herein to the following cases from other jurisdictions: Devine v. Cook (1955), 3 Utah 2d 134, 279 P.2d 1073; Sweet v. Ringwelski (1961), 362 Mich. 138, 106 N.W.2d 742; and Armstead v. Holbert (1961, W.Va.), 122 S.E.2d 43.

104

"In each of such cases, the truck driver motioning the injured party, or the motorist, to proceed to cross in front of his vehicle, was made a party to the action brought by the one claiming damages. In each of two of such cases, Armstead v. Holbert, supra, and Sweet v. Ringwelski, supra, the injured party to whom the motion to cross in front of the motor vehicle was given was a girl of tender years.

"In the case of Devine v. Cook, supra, a motorist and his passengers, who were proceeding on the same side of the street occupied by a tractor-trailer, brought actions against the employer of the truck driver and the motorist who proceeded from a side street, across a through highway intersection in front of the truck stopped to make a left turn and into the path of the Devine automobile upon the claimed signal of the truck driver. The act of the truck driver, in motioning the motorist to proceed, was deemed to be only an indication that he, the truck driver, was yielding the right of way to the motorist, and not an indication that such driver could proceed as though the entire roadway was clear.

"In consideration of the case before us, we note that Section 4511.39, Revised Code, in part, says:

'No person shall turn a vehicle * * * from a direct course upon a highway until such person has exercised due care to ascertain that the movement can be made with reasonable safety to other users of the highway * * *.'

"It must be remembered that Row said he could not see what vehicles, if any, were in the curb lane. The truck blocked his view of that portion of the highway into which he was turning. He stated further that he depended entirely upon the motion of the operator of the truck that he could proceed to complete his left turn in safety.

"This court has heretofore stated, in Eisenhuth v.

Moneyhon, 161 Ohio St. 367, 119 N.E.2d 440, that Section 4511.39, Revised Code, prescribes a rule of conduct as distinguished from a specific duty to act. One who fails to obey such rule of conduct is not then guilty of negligence per se.

"The truck driver in the instant case could have gone forward, thus forcing Row to wait until the northbound part of Wick Avenue was clear. He chose to signal Row to proceed in front of him. The truck driver, in the position he found himself, owed no duty to Row. His act was one of courtesy, not obligation. Any other view of the motion on the part of Row can only be construed as a disregard of the rights of others lawfully on the highway.

\* \* \*

"When Row, without exercising any care, proceeded to complete his left turn, and thereby collided with the vehicle being operated by Bires, he became guilty of negligence as a matter of law.

"\* \* \* The act of courtesy displayed by the truck driver cannot impose upon him a duty to others rightfully on the highway, nor can it be called an act of negligence on his part, thereby imposing upon him the consequences of a voluntary act."

Thus it is seen that substantially the same legal issues have been considered by appellate courts in eleven States. The conclusions reached in six [5] States broadly may be summarized as requiring jury consideration of primary negligence or contributory negligence, or both. In five States directed verdicts for the defendant on grounds of the absence of primary negligence or the presence of contributory negligence as a matter of law, or both were sustained. In spite of a surface appearance that they express

5. The decision in Smith v. Bocklitz, 344 S.W.2d 97 (S. Ct. Mo., 1961) although sustaining judgment for a motioning defendant, implied that the issues of negligence and contributory negligence properly were left to the determination of the jury.

a minority view, we find the decisions reaching the latter conclusion more persuasive. We do so in part because of factual variants in some of the cases where jury consideration of the issue of liability was permitted; in part because we find the decisions of the other appellate courts better grounded in reason as applied to the facts of the subject case; and in part because we believe that Maryland decisions in cases dissimilar in their facts, nonetheless guide us to the conclusion we reach.

There are substantial factual differences in some of the cases where the issues were held to be for the jury. *Van Jura v. Row*, supra, distinguished the leading case of *Sweet v. Ringwelski*, and the case of *Armstead v. Holbert*, both *supra*, on the ground that both involved children of tender years. We note, in addition, that both cases involved accidents at intersections. In *Riley v. Board of Education*, *supra*, the pedestrian was an eight year old child. We have previously pointed out that two justices in a concurring opinion in the case of *Wulf v. Rebbun, supra*, filed a caveat to its rule (declared on pleadings), "[If] the evidence at the trial will disclose that truck driver [waver] was seated * * * with his back to the * * * [moving] car approaching from the [rear]." Such is precisely the position occupied by the appellee Horak (standing vehicle) in the subject case.

The rule that contributory negligence will not be declared as a matter of law unless the act is distinctive, prominent and decisive about which reasonable minds would not differ as to its negligent character, is of ancient lineage and of current validity. *B. & O. R.R. Co. v. State*, 36 Md. 366, 381; *Reiser v. Abramson*, 264 Md. 372, 378, 286 A. 2d 91, 93. In cases involving injuries to pedestrians struck by a motor vehicle in attempting to cross a highway between intersections, that rule must be applied in the light of legislative [6] and judicial demands for caution in such crossings.

Although a pedestrian who crosses a street between intersections is not necessarily negligent, *Boyd v. Simpler*,

---

6. See Article 66½, § 11-503 quoted herein *supra*.

222 Md. 126, 132, 158 A. 2d 666, 669, he must use the greatest of care for his own protection, and he must accommodate himself to vehicles on the road and cross only as traffic affords a safe opportunity. *Henderson v. Brown,* 214 Md. 463, 468, 135 A. 2d 881, 884.

So, in *Love v. State,* 217 Md. 290, 297, 142 A. 2d 590, 594, it was said:

> "Cases in this State are numerous and uniform in holding that a pedestrian crossing a street between intersections is guilty of contributory negligence if he fails to look for approaching motor vehicles, or, if having looked, he fails to see such a vehicle, and so fails to guard against being struck by it."

See also *Pratt v. Coleman,* 14 Md. App. 76, 286 A. 2d 209.

In *Campbell v. Jenifer, supra,* a pedestrian crossing North Avenue in Baltimore City between intersections was injured when a motor vehicle — stopped to permit his passage — was caused to strike him when struck itself by a following vehicle. The Court said at 111 [355]:

> "Under such circumstances, even if we assume, without deciding, that Jenifer and Bond were guilty of negligence in that they caused the truck to propel the automobile forward so as to strike and injure the plaintiff, we think there is not the slightest doubt that the plaintiff was contributorily negligent as a matter of law when he elected to leave a place of safety for a position of peril and contest the right of way of the vehicular traffic then between street crossings in the west-bound lanes of the avenue."

adding at 112 [356]:

> "Furthermore, even if the plaintiff was so naive as to believe that Shaunessy [stopped vehicle] had yielded his right of way on one of the busiest thoroughfares in Baltimore to accommodate the plaintiff, he certainly had no right to assume that

108

other vehicular traffic on the avenue would do likewise."

The negligence charged against the appellee Horak is readily apparent. Briefly stated, appellant contends that the stopping of the Horak automobile, coupled with the accompanying signal to the appellant to continue crossing the highway gave rise to an issue properly for the jury's consideration whether such conduct was negligent and whether it was a proximate cause of appellant's injury.

The negligence charged against the appellee Spampinato, however, is more ethereal. The declaration alleged excessive speed considering the weather conditions and a failure to slow or stop her vehicle after observing the stopping and signalling action of Horak. There is not a scintilla of evidence to show that Spampinato was aware or reasonably should have been aware: (a) of the presence of Dix in the highway; (b) that Horak had stopped to permit a pedestrian to cross the highway or (c) that Horak had made the hand signal described by the plaintiff. There was undisputed evidence, on the other hand, that the Spampinato vehicle at all times was driven within a single lane of the highway at a speed of 20 to 25 miles per hour in a 30 mile zone. Spampinato, called as a witness by Dix, also testified that she thought the Horak vehicle had stalled in the highway. Appellant is bound by that testimony. *Myerberg v. Thomas*, 13 Md. App. 539, 284 A. 2d 29. Thus, although grant of the motion for directed verdict as to Spampinato was grounded by the trial judge upon the contributory negligence of the appellant as a matter of law, we find nothing in this record to show any negligence on the part of Spampinato and thus no basis for liability as to her, whatever may have been the negligence of Horak or the contributory negligence of Dix. Spampinato clearly was entitled to a directed verdict in her favor.

As to the appellee Horak, we believe that under the circumstances here existing, namely, an adult crossing a major four lane highway at a point other than a crosswalk, that the stopping of her vehicle, coupled with the waving

gesture to the pedestrian was not a negligent action that was a proximate cause of harm to the pedestrian. We find the language used by the Utah Court in *Devine v. Cook, supra,* at 1082, very persuasive:

"It is to be recalled that the only act or omission on the part of Hatch Co. was that the driver of the Hatch vehicle, [Horak] as testified to by Mrs. Cook and Mrs. Hutchings, by signal or some motion directed Mrs. Cook [Dix] to proceed. We do not believe that it is the law, that the giving of such a signal was an act of negligence on the part of the driver. All the signal amounted to, if given, was a manifestation on the part of Metcalf [Horak] to Mrs. Cook [Dix] that as far as he was concerned Mrs. Cook [Dix] could proceed. At the most all he did was to signal to Mrs. Cook [Dix] and indicate, as far as Metcalf [Horak] was concerned, he [Horak] yielded her the right-of-way. She [Dix] could see that he [Horak] was on the left side of the cab of his truck [Volkswagen bus] and therefore in no position to see, or to give her [Dix] any assurance, that there was no traffic approaching upon the right of his truck from the rear." (Principals in subject case inserted.)

By the same token, appellant had no right to assume that other vehicular traffic on the highway would yield their right of way. *Campbell v. Jenifer, supra.*

It is plain accordingly that the injuries sustained by appellant resulted from her own negligence in moving from a place of safety into the path of danger at a time when the movement of traffic lawfully upon the highway did not afford a safe opportunity for passage. Such action on her part was distinctive, prominent and decisive. That such action was negligent is a matter about which reasonable minds would not differ.

The motions for directed verdict properly were granted.

*Judgments affirmed.*
*Costs to be paid by appellants.*