DIX, ETC. ET AL. *v.* SPAMPINATO ET AL.

[No. 104, September Term, 1975.]

*Decided June 2, 1976.*

*Motion for reconsideration filed June 23, 1976; denied July 12, 1976.*

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and O'DONNELL, JJ.

*Francis N. Iglehart*, with whom was *Michael J. Lambros* on the brief, for appellants.

*James E. Gray* for Patricia Mae Spampinato, one of appellees. *William A. Hegarty* for Jeanette Horak, other appellee.

SINGLEY, J., delivered the opinion of the Court. LEVINE and ELDRIDGE, JJ., dissent and ELDRIDGE, J., filed a dissenting opinion in which LEVINE, J., concurs at page 39 *infra*.

We granted certiorari in this case in order that we might consider the result reached by the Court of Special Appeals in *Dix v. Spampinato*, 28 Md. App. 81, 344 A. 2d 155 (1975), a

case which appears to be one of first impression in Maryland. We shall affirm the judgment of that court, which had affirmed the granting of the defendants' motions for directed verdicts by the Circuit Court for Baltimore County (Turnbull, J.).

Suit was instituted by Arnita Denise Dix and Richard S. Dix, her father and next friend, for damages for personal injuries and for medical and hospital expenses sustained by Miss Dix when she walked in front of a Volkswagen bus operated by Mrs. Jeanette Horak, which had stopped to let her pass, and was struck by a car operated by Mrs. Patricia Mae Spampinato. At the conclusion of the plaintiffs' cases, the Circuit Court for Baltimore County granted motions for directed verdicts filed by the defendants, Mrs. Horak and Mrs. Spampinato. Miss Dix and her father appealed to the Court of Special Appeals, which affirmed the judgments entered in the defendants' favor.

On the day of the accident, Miss Dix was employed as a nurse's aide at the Bent Nursing Home located on the west side of Reisterstown Road in Reisterstown, Maryland. At about 3:30 p.m. on the afternoon of 27 August 1971, she alighted from a northbound bus on the east side of Reisterstown Road at a point south of her place of employment. It was raining at the time, and the bus had stopped to the north of its regular stop because of puddles in the road. There was a marked pedestrian crosswalk about 200 feet south of the point where the accident occurred. Here, Reisterstown Road is a four-lane dual highway with two marked northbound lanes and two marked southbound lanes, each about 10 feet wide. There is no median strip.

Miss Dix testified that after alighting from the bus and crossing the two northbound lanes, she reached the center of the road. Mrs. Horak, who had brought her Volkswagen bus to a stop in the easternmost of the southbound lanes, waved to Miss Dix, who proceeded to cross in front of the bus. As Miss Dix herself testifed, "The next thing I remembered I was on the ground," having been struck by Mrs. Spampinato's car, which was southbound in the westernmost lane.

As the Court of Special Appeals noted, when an appellate court is reviewing the granting or denial of a motion for a directed verdict or for a judgment n.o.v., the court must resolve all conflicts of evidence in favor of the plaintiff, must assume the truth of all evidence and must accept such inferences as may naturally and legitimately be drawn therefrom which tend to support the plaintiff's right to recover, *Yommer v. McKenzie*, 255 Md. 220, 228, 257 A. 2d 138, 142 (1969); *Campbell v. Jenifer*, 222 Md. 106, 110, 159 A. 2d 353, 355 (1960).

The trial court, in granting the motions for directed verdicts, did so on the ground that Miss Dix was guilty of contributory negligence as a matter of law. Maryland Code (1957, 1970 Repl. Vol.) Art. 66½, § 11-503 (a) provides:

> "Every pedestrian crossing a roadway at any point other than within a marked crosswalk or within an unmarked crosswalk at an intersection shall yield the right-of-way to all vehicles upon the roadway."

Miss Dix was 200 feet north of the marked crosswalk, and was not crossing at an intersection. "This Court has often held it to be contributory negligence as a matter of law for a pedestrian to leave a place of safety for a position of peril between street crossings, thereby contesting the right of way of vehicular traffic then in the street." *Vokroy v. Johnson*, 233 Md. 269, 273-74, 196 A. 2d 451, 453 (1964); see also *Leonard v. Hanson*, 225 Md. 76, 79, 169 A. 2d 459, 461 (1961); *Campbell v. Jenifer, supra*, 222 Md. at 111.

Miss Dix attempts to skirt the rule of these cases by her contention that because Mrs. Horak stopped the Volkswagen bus and waved Miss Dix on, Mrs. Spampinato should have been alerted by this circumstance, but instead did nothing to avoid hitting Miss Dix. The fallacy in this argument is that Miss Dix, by her own testimony, admitted that she never saw Mrs. Spampinato's car, which can only mean that Miss Dix either never looked or did not see when she did look before she left a place of safety in front of the Volkswagen bus, *Henderson v. Brown*, 214 Md. 463, 472, 135 A. 2d 881, 886 (1957). Even if we assume that Mrs. Spampinato was

negligent (and there was no evidence that she was), Miss Dix's recovery against her is barred by contributory negligence, *Love v. State, Use of Nelson,* 217 Md. 290, 297, 142 A. 2d 590, 594 (1958).

Turning now to the question of Mrs. Horak's alleged negligence, as Judge Menchine noted for the Court of Special Appeals, there are cases which deal with situations where a plaintiff places himself in a position of peril in response to verbal directions or hand signals given by others, but they are conflicting. The Court of Special Appeals, after a careful analysis of the cases, 28 Md. App. at 91-106, found that, of the 11 jurisdictions which had considered the negligence *vel non* of the signaling operator of a motor or other vehicle, six jurisdictions have concluded under the facts of each case that it is a jury issue: *Spagnola v. New Method Laundry Corp.,* 112 Conn. 399, 152 A. 403 (1930); *Sweet v. Ringwelski,* 362 Mich. 138, 106 N.W.2d 742 (1961); *Gamet v. Jenks,* 38 Mich. App. 719, 197 N.W.2d 160 (1972); *Riley v. Board of Education,* 15 App. Div. 2d 303, 223 N.Y.S.2d 389 (1962); *Cunningham v. Walsh,* 53 R. I. 23, 163 A. 223 (1932); *Armstead v. Holbert,* 146 W. Va. 582, 122 S.E.2d 43 (1961); *Wulf v. Rebbun,* 25 Wis. 2d 499, 131 N.W.2d 303 (1964).

On the other hand, five jurisdictions have held that the liability of the signaling operator should not be submitted to the jury: *Hill v. Wilson,* 124 Cal. App. 2d 472, 268 P. 2d 748 (1954); *Harris v. Kansas City Public Service Co.,* 132 Kan. 715, 297 P. 718 (1931); *Charles v. Sullivant,* 159 So. 756 (La. App. 1935); *Van Jura v. Row,* 175 Ohio St. 41, 191 N.E.2d 536 (1963); *Devine v. Cook,* 3 Utah 2d 134, 279 P. 2d 1073 (1955).

The Court of Special Appeals adopted the view of the numerical minority, that verdicts should be directed in favor of the signaling operator, because of the absence of the signaling operator's primary negligence, the presence of the pedestrian's contributory negligence or both.

We accept the position taken by the Court of Special Appeals. To say that Mrs. Horak's conduct presented a jury question, would seem an unwarranted extension of the role of the Good Samaritan, *see Glanzer v. Shepard,* 233 N. Y.

236, 239-40, 135 N. E. 275, 276 (1922) (Cardozo, J.); *Northern Central Ry. Co. v. State,* 29 Md. 420 (1868); 57 Am. Jur. 2d *Negligence* § 46 at 393-94 (1971).

The concept was evanescently before our predecessors in *Summers v. Brown,* 170 Md. 695, *reported in* 183 A. 246 (1936) where a pedestrian attempted to rely upon a phantom Samaritan. We find completely unacceptable the notion that, under the facts of this case, a signal from Mrs. Horak can be taken to mean anything more than that Miss Dix might, with safety, step in front of the vehicle which Mrs. Horak was operating.

> *Judgments affirmed; costs to be paid by appellants.*

*Eldridge, J., dissenting:*

I agree with the majority that there is no evidence of negligence on the part of Mrs. Spampinato, and that a directed verdict should have been granted as to her. However, in my view jury questions were presented as to the primary negligence of Mrs. Horak in allegedly signalling Miss Dix to cross the street in front of her bus and as to the contributory negligence of Miss Dix in relying upon the hand signal to assume that her passage was clear.

As the majority points out, a pedestrian who leaves a position of safety for a position of peril between street crossings has often been held to be contributorily negligent. *Reid v. Pegg,* 256 Md. 289, 260 A. 2d 38 (1969); *Vokroy, Adm'r v. Johnson,* 233 Md. 269, 273-274, 196 A. 2d 451 (1964); *Leonard v. Hanson,* 225 Md. 76, 79, 169 A. 2d 459 (1961). But the mere fact that a pedestrian crosses between intersections does not alone create a presumption of negligence on his part. Whether a pedestrian is negligent in crossing a street at a place other than a crosswalk may, depending upon the circumstances, be for the jury. As the Court stated in *Ebert Ice Cream Co. v. Eaton,* 171 Md. 30, 37, 187 A. 865 (1936):

> "It has been held by this Court, contrary to some text-writers, that it is not *prima facie* evidence of

negligence for a pedestrian to cross a street between intersections, but that 'the question is one of ordinary care only, entirely for the jury.' "

See *Nizer v. Phelps*, 252 Md. 185, 206, 249 A. 2d 112 (1967); *MacKenzie v. Reesey*, 235 Md. 381, 386, 201 A. 2d 848 (1964); *Nance v. Kalkman*, 223 Md. 564, 569, 165 A. 2d 757 (1960); *Henderson v. Brown*, 214 Md. 463, 468, 135 A. 2d 881 (1957).

In the instant case, Miss Dix produced evidence that Mrs. Horak, the operator of the Volkswagen bus, stopped her vehicle in front of Miss Dix, who was then standing in the center line of the street, and signalled her to cross the street in front of the bus. Miss Dix, who is 5 feet 3 inches in height, testified that her vision of oncoming vehicles was blocked by Mrs. Horak's bus. It is apparent therefore that Mrs. Horak may have been in a better position to observe the traffic than was Miss Dix. While Mrs. Horak was under no duty to direct Miss Dix to cross the street, having attempted to do so she was bound to exercise ordinary care. *Haralson v. Jones Truck Line*, 223 Ark. 813, 270 S.W.2d 892, 895, 48 A.L.R.2d 248 (1954); *Wulf v. Rebbun*, 25 Wis. 2d 499, 131 N.W.2d 303, 306 (1964). *See Penna. R.R. Co. v. Yingling*, 148 Md. 169, 176-177, 129 A. 36 (1925). As Judge Cardozo stated in *Glanzer v. Shepard*, 233 N. Y. 236, 135 N. E. 275, 276, 23 A.L.R. 1425 (1922), "It is ancient learning that one who assumes to act, even though gratuitously, may thereby become subject to the duty of acting carefully, if he acts at all."

I would adopt, under the circumstances of this case, the view of the majority of jurisdictions which have held that the intended meaning of a driver's signal to cross a street and the significance such a signal might reasonably convey to a pedestrian are jury questions. *See, e.g., Spagnola v. New Method Laundry Co.*, 112 Conn. 399, 152 A. 403 (1930); *Gamet v. Jenks*, 38 Mich. App. 719, 197 N.W.2d 160, 164 (1972); *Sweet v. Ringwelski*, 362 Mich. 138, 106 N.W.2d 742 (1961); *Riley v. Board of Education, Central Sch. Dist. No. 1*, 15 App. Div. 2d 303, 223 N.Y.S.2d 389 (1962); *Armstead v.*

*Holbert,* 146 W. Va. 582, 122 S.E.2d 43 (1961); *Wulf v. Rebbun, supra.*

Judge Levine authorizes me to state that he concurs in the views expressed herein.