𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

NOLDE BROTHERS, INC.

v.

CURTIS E. WRAY

June 6, 1980.

Record No. 781070.

Present: All the Justices.

*John Charles Thomas* (*R. Kenneth Wheeler; Douglas W. Davis; Hunton & Williams,* on briefs), for appellant.

*Vernon B. Oakley, Jr.; E. Warren Matthews (Frank D. Harris; Harris & Matthews,* on brief), for appellee.

I'ANSON, C.J., delivered the opinion of the Court.

The plaintiff, Curtis E. Wray, instituted this action against the defendants, Alphus Wray, Nolde Brothers, Inc. (Nolde), and its employee, Hugh Reese, to recover damages for personal injuries sustained in a motor-vehicle accident. At the conclusion of the evidence, the trial court ruled that Alphus Wray was guilty of negligence as a matter of law, but held that the issue of Reese's negligence was a jury question. The plaintiff took a nonsuit as to Reese. The jury returned a verdict of $75,000 against Alphus Wray and Nolde. We granted Nolde a writ of error to the judgment entered on the jury's verdict.

The accident occurred on Route 58 in the town of South Hill at noon on a clear day in July 1975. At the place of the accident, Route 58 has two eastbound and two westbound lanes. While a grass median strip separates the eastbound and westbound lanes prior to and following the intersection, a paved crossover at the intersection allows traffic to turn onto side streets which run north and south of Route 58. At the crossover, there is a third lane, a left-turn lane, for eastbound traffic on Route 58. Although no traffic light controls the intersection, a yield sign in the median governs traffic entering the crossover from the westbound lanes of the highway.

Prior to the accident, Alphus Wray was traveling west on Route 58 in his pickup truck. He turned into the crossover and stopped, intending to cross the eastbound lanes of Route 58 to a parking lot. At approximately the same time, a truck owned by Nolde and driven by Reese came to a stop in the left-turn eastbound lane of Route 58. Wray testified that he stopped his vehicle in the crossover three or four feet north of the front end of the Nolde truck and that his view of eastbound traffic was blocked by the Nolde truck and other vehicles behind it. Although he knew the Nolde truck had the right of way, he "eased up" a few feet after Reese motioned for him to proceed. At the same time, Reese "eased up" his truck and again motioned Wray to proceed. "[T]otally rely[ing]" upon Reese's signal as an indication that he could safely cross the eastbound lanes, Wray proceeded into the inside eastbound lane. Wray's truck collided with the vehicle operated by the plaintiff, his cousin, in the outside eastbound lane.

Reese testified that, as his vehicle was situated in the left-turn lane of eastbound Route 58, the truck driven by Alphus Wray pulled into the crossover and stopped four or five feet from his truck. He denied motioning Wray to proceed. After both parties moved their vehicles forward on several occasions, Reese became "disgusted" and threw both his hands in the air. Wray then "shot across" in front of his truck and proceeded across the highway.

The plaintiff, Curtis Wray, testified that when he was a short distance from the crossover, he "glimpsed this [Alphus Wray's] truck flash out in front of me." Although he applied his brakes, he was unable to avoid colliding with Alphus Wray's truck and was seriously injured in the collision.

The dispositive issue in this case is whether a jury could reasonably determine that Nolde's driver, Reese, was negligent in giving the hand signals to Alphus Wray. Nolde contends that the signals were merely a yielding of its driver's right of way and could not have been reasonably interpreted as a representation that Alphus Wray could proceed across the eastbound lanes. The plaintiff, on the other hand, contends that the meaning of the hand signals was a question for the jury.

Whether a driver of a motor vehicle can be held to be negligent in giving such a hand signal is an issue of first impression in Virginia. Indeed, very few appellate courts have confronted the issue in analogous fact situations.* Courts holding that a driver's signal

---

* Several cases initially appearing to provide guidance are of little utility in deciding

did not create a jury question concerning negligence have frequently noted that such a signal, under different circumstances, might constitute negligence. *See, e.g., Devine* v. *Cook,* 3 Utah 2d 134, 149, 279 P.2d 1073, 1083 (1955). *See also Dix* v. *Spampinato,* 278 Md. 34, 39, 358 A.2d 237, 239 (1976) (noting that "under the facts of this case" the signal could not constitute negligence). Most courts appear to hold that, under certain circumstances, a driver's giving a signal can constitute negligence. *See, e.g., Petroleum Carrier Corporation* v. *Carter,* 233 F.2d 402, 405 (5th Cir. 1956) (court interpreting Georgia law: signal to pass); *Haralson, Adm'x* v. *Jones Truck Lines,* 223 Ark. 813, 816, 270 S.W.2d 892, 894 (1954) (signal to pass); *Thelen* v. *Spilman,* 251 Minn. 89, 86 N.W.2d 700 (1957) (signal to pass); *Miller* v. *Watkins,* 355 S.W.2d 1, 4 (Mo. 1962) (signal to pass); *Wulf* v. *Rebbun,* 25 Wis. 2d 499, 503-04, 131 N.W.2d 303, 306-07 (1964) (signal for car to turn). These decisions rest upon a rationale most aptly stated by Justice Cardozo: "It is ancient learning that one who assumes to act, even though gratuitously, may thereby become subject to the duty of acting carefully, if he acts at all." *Glanzer* v. *Shepard,* 233 N.Y. 236, 239, 135 N.E. 275, 276 (1922).

■ Nevertheless, a jury question concerning a driver's negligence in giving such a signal is not presented where the signal could not reasonably have been interpreted as a signal to proceed across lanes of oncoming traffic. The signaler's ability to foresee potential danger is a factor giving meaning to a signal. Where a driver is not in a position to ascertain whether the person receiving the signal may safely proceed, it is unreasonable to conclude that the driver's gestures are a signal that it is safe to proceed. This rule has been applied to the situation under consideration in this case, where the signaler was in the driver's seat of his vehicle and thus not in a position to see right-lane traffic traveling in the same direction. *See, e.g., Government Employees Insurance Co.* v. *Thompson,* 351 So.2d 809 (La. App. 1977); *Dix* v. *Spampinato,* 28 Md. App. 81, 106, 344 A.2d 155, 169 (1975), *aff'd,* 278 Md. 34, 358 A.2d 237 (1976); *Devine*

the issue beore us. While *Spagnola* v. *New Method Laundry Corporation,* 112 Conn. 399, 152 A. 403 (1930), and *Cunningham* v. *Walsh,* 53 R. I. 23, 163 A. 223 (1932), involve reliance upon a hand signal, the liability of the signaler was not at issue. Likewise, *Gamet* v. *Jenks,* 38 Mich. App. 719, 197 N.W.2d 160 (1972), and *Kemp* v. *Armstrong,* 40 Md. App. 542, 392 A.2d 1161 (1978), are of little value in resolving this issue because in both cases the driver, although relying upon the signal to a limited extent, did not rely upon the signal in accomplishing the act resulting in the accident.

v. *Cook*, 3 Utah 2d at 147, 279 P.2d at 1082 (1955). *See also, Wulf v. Rebbun*, 25 Wis. 2d at 507, 131 N.W.2d at 308 (1964) (concurring opinion noting that signaler could not be found to be negligent if evidence revealed he was not in a position to ascertain whether it was safe to proceed).

Viewing the evidence in the light most favorable to the plaintiff, as is necessary because of the jury verdict, we conclude that, while Reese's hand gestures could be interpreted as either an act of frustration or a yielding of his right of way, these gestures could not be construed as a signal for Wray to proceed across the eastbound lanes of Route 58. In the present case, Alphus Wray could see that Reese was seated in the driver's seat, on the left-hand side, of the truck. He thus knew that Reese was not in a position to determine whether the eastbound traffic lanes, which were to the right of the Nolde truck, were free of vehicles. In light of these facts, we conclude that Alphus Wray could not have reasonably interpreted Reese's gestures to mean that it was safe to proceed across the two eastbound lanes of Route 58. We consequently hold that the trial court erred in submitting the issue of Reese's negligence to the jury. Hence, the judgment entered by the trial court on the jury's verdict against Nolde is reversed and set aside, and final judgment will be entered here.

*Reversed and final judgment.*